95 So.2d 510 (1957)
Jay I. KISLAK and Ira A. Hotchkiss, and Mona Hotchkiss, his wife, Petitioners,
v.
Koren KREEDIAN, Respondent.
Supreme Court of Florida, Special Division B.
May 29, 1957.
*511 Joseph A. Varon, Hollywood, and Turnbull & Senterfitt, Orlando, for petitioners.
Nixon Butt, Orlando, and Adams & Judge, Daytona Beach, for respondent.
DREW, Justice.
As reluctant as we are to unduly extend the length of opinions, a proper evaluation of this appeal and discussion of the principles involved require the inclusion herein of the germane portions of the complaint filed in the trial court and around which this entire litigation revolves.
"3. Plaintiff, Koren Kreedian, and the Defendants, Jay I. Kislak, and Ira A. Hotchkiss and Mona Hotchkiss, his wife, have from time to time in the year immediately last past, individually and as joint venturers (in which two or more of said parties participated in equal shares) invested, speculated, purchased, sold and dealt in real estate; the Plaintiff, Koren Kreedian, and Defendant, Jay I. Kislak, having during the six months immediately last past, as venturers in equal shares, invested, purchased and dealt in a 700 lot tract of land in Palm Beach County, Florida.
"4. That Defendant, Jay I. Kislak, based upon the unusual success and the profits realized by said Defendant, Jay I. Kislak, and Plaintiff, Koren Kreedian, in their said speculative activities in connection with the 700 lot tract of land in Palm Beach County, requested Plaintiff, Koren Kreedian, to take a desk in the office of said Defendant, Jay I. Kislak, and to keep lookout for other lots and tracts of land in which they, said Plaintiff, Koren Kreedian, and said Defendant, Jay I. Kislak, might invest to carry on their speculative activities as joint venturers, each participating therein in equal shares.
"5. Plaintiff, Koren Kreedian, pursuant to the request of Defendant, Jay I. Kislak, did, on or about the 20th day of March, A.D. 1956, take a desk in the office of Defendant, Jay I. Kislak, and did subsequently, on or about the 28th day of March, 1956 learn of the availability for purchase of approximately 20,500 acre tract of land, known as the El Pico Ranch, in Brevard County, Florida, and owned by Heller Brothers of Winter Garden, Florida, and did immediately inform and advise Defendant, Jay I. Kislak, thereof, and at the instance of Defendant, Jay I. Kislak, and in his own behalf, did, on or about the 4th day of April, 1956, travel from Miami, *512 Florida, to Brevard County, Florida, for the purpose of viewing said property, making an investigation as to the advisability of the purchase of same and instituting preliminary negotiations therefor. Upon the return of Plaintiff, Koren Kreedian, to Miami, Florida, after having viewed the said property and made an investigation of the advisability of the purchase thereof and instituted preliminary negotiations therefor, he did report favorably to Defendant, Jay I. Kislak, who immediately, with the consent of Plaintiff, Koren Kreedian, contacted Defendant, Ira A. Hotchkiss, and interested him in joining with Plaintiff, Koren Kreedian, and Defendant, Jay I. Kislak, in the investment, purchase and speculation in said lands. That on Friday, the 6th day of April, A.D. 1956, Plaintiff, Koren Kreedian, and Defendant, Ira A. Hotchkiss, flew from Miami, Dade County, Florida, to Cocoa, Brevard County, Florida, in a plane chartered by Defendant, Jay I. Kislak, for the purpose of aerial and other inspection of said lands and the Defendant, Ira A. Hotchkiss, following such inspection, being then satisfied of the advisability of the purchase of said property, the Plaintiff, Koren Kreedian, at the instance of the Defendant, Ira A. Hotchkiss, and with the consent of Defendant, Jay I. Kislak, and in his own behalf, then communicated and commenced negotiations for the purchase of said property with James Heller in Winter Garden, Florida, one of the owners and representative of the owners thereof, and as a result of such communication and negotiations a verbal agreement was entered into by and between Plaintiff, Koren Kreedian, Defendant, Ira A. Hotchkiss on behalf of Kreedian, Kislak and Hotchkiss as joint venturers in the purchase of said property, and James Heller as part owner and representative of the owners thereof, for a price of $75.00 per acre, plus a real estate commission to be paid by the purchasers, which said oral agreement was subsequently, on the 10th day of April, 1956, except for the omission of Plaintiff's name therefrom, reduced to writing and duly executed by and on behalf of all persons and parties in interest, save and except the Plaintiff, Koren Kreedian, who did not appear as a party to the purchase and sale agreement because of the advice and representation of the Defendant, Jay I. Kislak, that it was not necessary that said Plaintiff's name appear on the contract and agreement for purchase, as said Plaintiff's interest was recognized and protected, which advice and representation of said Defendant, Jay I. Kislak, Plaintiff, Koren Kreedian, because of past associations and his confidence therein and because of the mutual trust and confidence reposed by Plaintiff in the Defendants, Jay I. Kislak and Ira A. Hotchkiss, as joint venturers in said transaction, Plaintiff did believe and relied thereon. A copy of said agreement is attached hereto and by reference made a part hereof.
"6. Notwithstanding, following the execution of said contract and on or about the 3rd day of August, A.D. 1956, the Defendant, Jay I. Kislak and Ira A. Hotchkiss, advised your Plaintiff, Koren Kreedian, they could and would not now recognize said Plaintiff's interest in and to the agreement and contract of purchase of said property or in and to the property the subject thereof and could not and would not permit and allow your said Plaintiff to share and participate in the benefits of said contract and agreement or the profits to be realized in the venture, but on the contrary the Defendant, Jay I. Kislak, on a take it or leave it basis advised and informed said Plaintiff that he and the Defendant, Ira A. Hotchkiss, would pay to said Plaintiff the sum of Ten Thousand ($10,000.00) Dollars cash or the sum of Fifteen Thousand ($15,000.00) Dollars at the rate of Five Thousand ($5,000.00) Dollars per year, for his interest in said contract and the interest in the subject thereof, which said proffers the said Plaintiff did then and there decline and refuse.
"7. Plaintiff, Koren Kreedian, has at all times stood ready, able and willing to pay his proportionate share in said venture and *513 is now ready, able and willing to do so, nevertheless the Defendants, Jay I. Kislak and Ira A. Hotchkiss and Mona Hotchkiss, his wife, the premises notwithstanding, and notwithstanding the fact that said Plaintiff, as one of the joint venturers, expended great time and effort and was directly instrumental in and the moving cause in finding of the said property and the negotiations for the purchase thereof, now seek to wrongfully exclude said Plaintiff for their personal gain and enrichment; all to the great injury and damage to said Plaintiff.
"Wherefore, Plaintiff, Koren Kreedian, prays:
"(a) That the Court take jurisdiction of this cause and the parties hereto.
"(b) That Defendants, Jay I. Kislak and Ira A. Hotchkiss and Mona Hotchkiss, his wife, be declared and decreed to hold said aforesaid contract and agreement for the purchase of the property therein described, and the real property if same be before conveyed, in trust for the use and benefit of Plaintiff, Koren Kreedian, and Defendants, Jay I. Kislak and Ira A. Hotchkiss, as joint venturers and tenants in common.
"(c) That Defendants and each of them be jointly and severally enjoined and restrained, both by temporary and permanent order and decree of this Court, from in any wise whatsoever disposing of, secreting forfeiting or otherwise alienating or committing any action which would directly or indirectly inure to the prejudice, damage or injury of and to the Plaintiff, Koren Kreedian.
"(d) That a Receiver or other officer of this Court be appointed for the purpose of taking possession, control, management, operation and custody of the aforesaid contract and agreement and the real property the subject thereof, and the parties, joint venturers, Plaintiff, Koren Kreedian, and Defendants, Jay I. Kislak and Ira A. Hotchkiss, be ordered, directed and decreed to pay into the hands of said Receiver and/or the Registry of this Court, such monies as required for compliance with the terms and provisions of said contract and agreement for the purchase of the aforesaid property, and upon the closing of said transaction the title to said property be taken in the name of said Receiver or other officer of this Court and said property partitioned in accordance with the interest of the several joint venturers; all pursuant to the authority of this Court and the directions thereof.
"(e) In the alternative, that the Defendants, Jay I. Kislak, and Ira A. Hotchkiss, and each of them, be by appropriate order of this Court ordered, directed and decreed to forthwith assign, transfer and set over to the Plaintiff, Koren Kreedian, in accordance with the terms and provisions of paragraph 9 of said contract, an interest in and to said contract in accordance with his rightful share as a joint venturer therein.
"(f) That Plaintiff shall have such further and additional relief as may seem meet and proper in equity and good conscience and decree and judgment for his damages suffered and sustained in the premises."
The defendants filed individual motions to dismiss which were incorporated in their answer. The lower court denied the various motions to dismiss the complaint and this appeal followed.
The principal question raised is the sufficiency vel non of the complaint claiming an interest as a joint adventurer in the purchase of real estate without alleging by ultimate facts the essential elements necessary to the existence of the relationship of joint adventurers. This is but another way of charging that the complaint fails to state a cause of action against the defendant.
There were several grounds in the various motions to dismiss, a determination of only one of which is essential to the disposition of the cause here. We shall therefore confine this opinion to the basic issue of whether the complaint is sufficient to state a cause of action against the defendants; *514 or, to state it another way, the question here is whether, under the Florida Rules of Civil Procedure, Rule 1.8, 30 F.S.A., and the applicable authorities, "it informs the defendant of the nature of the cause against him."
While the Rules of Civil Procedure provide that the complaint shall be sufficient if it informs the defendant of the nature of the cause against him, the complaint must sufficiently allege the ultimate facts which, if established by competent evidence, would support a decree granting the relief sought under law. In other words, the complaint must allege a cause of action recognized under law against the defendants; otherwise it does not, in contemplation of the rule, "inform the defendant of the nature of the cause against him." To put it another way, the "nature of the cause" has reference to a cause of action cognizable under the law.
The legal concepts embraced within the words "joint adventurers" are of fairly modern origin and are purely the creature of the American courts. The relationship of "joint adventurers" or "co-adventurers" were not recognized in the early common law unless the elements of partnership were disclosed and proved. The legal concepts involved in joint adventurers rest solely upon the foundation of the law of partnerships. Such has been referred to by some courts and text writers as an association of persons or legal entities to carry out a single business enterprise for profit. It is a partnership of limited scope ordinarily terminating when the objects of its creation have been accomplished. Various and sundry terms have been used as descriptive of the legal relationship resulting from an agreement between two or more persons to engage in an enterprise of limited scope and duration. Such words as "joint adventurers", "syndicate", "joint enterprise" and "co-adventurer" are words which have been used to describe the legal relationship resulting from such an agreement. By whatever name called, it is the result of the agreement which creates the legal relationship. A mere allegation that a joint adventure was created is purely a legal conclusion. 48 C.J.S. Joint Adventures §§ 1-16, pp. 801-876; 30 Am.Jur. Joint Adventures pp. 675-712; Hambleton v. Rhind, 84 Md. 456, 36 A. 597, 40 L.R.A. 216.
It has been universally held that while "joint adventure" and partnership are separate legal relationships, both relationships are governed by the same rules of law. The laws governing partnership are applicable to joint adventures. We quote with approval the following from 30 Am.Jur. Joint Adventures, Sec. 5, p. 679:
"It is sometimes difficult, and often unnecessary, to distinguish in particular cases between joint adventures and partnerships, since the relations of the parties to a joint adventure and the nature of the association are so similar and closely akin to a partnership that it is commonly held that their rights, duties, and liabilities are to be tested by rules which are closely analogous to, and generally substantially the same as, those which govern partnerships. Some courts have gone so far as to say that a joint adventure is subject to exactly the same rules as a technical partnership, and must be enforced by the same principles. In general, however, it is now understood that the two relationships are not identical and that decisions defining and describing partnerships are not necessarily controlling upon the question of whether parties to a particular contract are joint adventurers. The outstanding difference between a joint adventure and a partnership is that the former relates to a single transaction, although it may comprehend a business to be continued over several years, while the latter relates to a general and continuing business of a particular kind, although there may be a partnership for a single transaction. Because *515 of the limited scope of the relationship between joint adventurers, it is generally more informal than the relationship between partners, and some of the incidents of partnership do not, or at least may not, attach thereto."
This principle has long been recognized in this State. In Proctor v. Hearne, 1930, 100 Fla. 1180, 1187, 131 So. 173, 176, this Court said:
"The relation of joint adventurers is quite similar to that of partnership, and is governed by the principles which constitute and control the law of partnership."
It is an elemental principle that the relationship of joint adventurers is created when two or more persons combine their property or time or a combination thereof in conducting some particular line of trade or for some particular business deal. There must be an agreement to share jointly on some agreed basis in not only profits but also losses. The relationship must arise out of a contract, express or implied. Such a contract is an indispensable prerequisite:
"As between the parties, a contract is essential to create the relation of joint adventurers. The contract need not, however, be expressed or be embodied in a formal agreement, or particularly specify or define the rights and duties of the parties. It may be inferred from the conduct of the parties or from facts and circumstances which make it appear that a joint enterprise was in fact entered into. The consideration for a contract of joint adventure may be a promise, express or implied, to contribute capital or labor to the enterprise." 30 Am.Jur. Joint Adventures Sec. 9, p. 681.
The Courts, including this Court, have held that while such contracts may be expressed or implied, the use of the word "implied" does not relieve one who alleges the existence of such a relationship of the burden of both alleging and proving that an agreement or contract supports the relationship as well as every element necessary to be embraced within the concept of a contract. Moreover, where, as in this case, the events and transactions which form the basis of the alleged relationship are not in writing, the burden of establishing the existence of such contract, including all of its essential elements, is indeed, as it should be, a heavy and difficult one. Business relationships are not customarily entered into in a casual manner. This is particularly true as to those involving the magnitude of that under discussion. The very fact that the agreement was not reduced to writing is evidence, however slight, that no such agreement actually existed. This is especially true in those cases where, as here, the alleged relationship is either in its executory stages or has not actually commenced to function to the extent that the actions of the parties themselves may tend to establish the validity of the assertion that such agreement existed.
The concept of a contract is one well recognized in law. It is a legal relationship. It contemplates an agreement enforceable at law between two or more parties for the doing or not doing of some specific thing. A contract must create legal obligations. 1 Bouv.Law Dict., Rawle's Third Revision, p. 658; 17 C.J.S. Contracts § 1, p. 310.
In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained: 48 C.J.S. Joint Adventures § 2, p. 809 and the authorities there referred to.
*516 The above principles have been recognized by us in the case of Tidewater Const. Co. v. Monroe County, 1933, 107 Fla. 648, 653, 146 So. 209, 211, where among other things this Court said:
"the question of whether the parties to a particular contract have created between themselves the relationship of joint adventurers is dependent upon their intentions, which is to be determined in accordance with the ordinary rules covering the interpretation of contracts; that joint adventurers are entitled to share in the profits, and must also share the losses, if any; that a joint adventure is very similar to a partnership, the chief distinction being that a joint adventure is usually limited to a single transaction; that although there may not be any express agreement that the parties shall share in the losses, if any, this must have been implied from the agreement made, and the circumstances surrounding its execution, as having been within the contemplation and intention of the parties. Of course, where the agreement is in writing and free from ambiguity or doubt, its legal effect must be determined as a matter of law, and the intention of the parties gathered therefrom. The agreement here in question contained an express provision for sharing the profits on this oiling work, but to our minds there is nothing in the agreement, nor in the evidence adduced on the trial, to indicate any intention that the paving company should share in any losses that might occur."
See also Green v. Putnam, Fla. 1957, 93 So.2d 378 wherein several facets of this question were recently discussed.
Inherent in contracts of this nature is the right and the authority of any one of the co-adventurers to bind the others with reference to the subject matter of the co-adventure. On this question we said in Boyd v. Hunter, 1932, 104 Fla. 561, 565, 140 So. 666, 667:
"Several essential elements are lacking to constitute this transaction a joint venture between the parties. The complainant, so far as the record shows, had no authority to sell or to offer the land for sale. She had no authority to bind the defendant in any manner in connection with the transaction and the defendant had no authority to bind her. She acquired no interest, either in trust or otherwise, in the land."
In the case of Proctor v. Hearne, supra,
"Each one of several joint adventurers has power to bind the others in matters which are strictly within the scope of the joint enterprise."
In that case we applied this principle in holding that one of the parties to a joint adventure was personally liable on a mortgage executed by his co-adventurer on the land which constituted the subject matter of the enterprise.
A careful analysis of the complaint in this cause, the germane portions of which have been set forth in the forepart of this opinion, fails to show a contract sufficient to establish a joint venture under the principle of law governing such enterprises which we have discussed at length. It appears from the complaint that the plaintiff made no monetary contribution to the purchase of the lands involved. The complaint contains no allegations that the plaintiff was to be responsible for any losses which might be incurred in the event the enterprise proved unsuccessful. The only allegation approaching this subject is in paragraph 7 where it is stated "Plaintiff * * * has at all times stood ready, willing and able to pay his proportionate share in said venture and is now ready, able and willing to do so."
*517 The allegations of the complaint that the defendants in the court below after entering into a contract to purchase the subject lands "advised your Plaintiff * * * they could and would not now recognize said Plaintiff's interest in and to the agreement and contract of purchase of said property or in and to the property the subject thereof and could not and would not permit and allow your said plaintiff to share and participate in the benefits of said contract and agreement or the profits to be realized in the venture," (emphasis supplied) falls far short in itself. Even if such agreement had been previously entered into it is insufficient to create a joint adventure. In Duvall v. Walton, 1932, 107 Fla. 60, 64, 144 So. 318, 319, we said with reference to the contract there under discussion "The agreement that the three of them would develop the property by subdividing it into lots and place it on the market, and then, after paying the expenses and paying to Mrs. Duvall the purchase price, they would share equally the profits, did not make of them joint adventurers or partners in the purchase of the land and in the obligations given for it." Moreover, we find no allegation concerning the essential element of joint control or right of control which, as we have pointed out, is an essential element in contracts of this kind.
Measured by the long established principles we have enunciated and construed in a light most favorable to the plaintiff in the trial court, the complaint is wholly insufficient and therefore the order of the trial court overruling the motion to dismiss must be and the same is hereby quashed with directions to enter an order granting the motion to dismiss and for further proceedings not inconsistent with these views.
Certiorari granted. The order appealed from quashed.
TERRELL, C.J., and HOBSON and THORNAL, JJ., concur.