198 So.2d 39 (1967)
Blanche I. KECK, Appellant,
v.
Floyd M. SCHUMACHER, Woodrow W. Harshman, Sebring Packing Company, Inc., a Florida Corporation, Appellees.
No. 7014.
District Court of Appeal of Florida. Second District.
April 5, 1967.
Rehearing Denied May 16, 1967.
Claude Pepper Law Offices, Miami Beach and Tallahassee, for appellant.
*40 E. Snow Martin, of Martin & Martin, Lakeland, for appellees.
ODOM, ARCHIE M., Associate Judge.
This appeal is taken from a Final Decree entered in the Circuit Court of Highlands County. The record on appeal contains ten volumes with eight being devoted to the testimony of witnesses. The Chancellor made extensive findings of fact which are a part of the Final Decree and which are supported by the record. We find that we cannot improve or digest these findings, so the same are hereby incorporated in this opinion.
"This extensive and protracted litigation was instituted by the Plaintiff widow seeking the dissolution or distribution of assets of two corporations in which she has become, by inheritance from her husband, the owner of a one-third interest.
"The record establishes that, during the late depression, a packing house in Sebring, operationally allied with the Florida Citrus Exchange, was failing financially. The successful operation of such an enterprise is dependent upon the existence of growers who would have large quantities of fruit packed in such facility and shipped through the marketing organization of the Exchange.
"The Defendants Harshman and Schumacher owned citrus groves and through their caretaking business controlled the disposition of large volumes. One Sebring had managed the almost bankrupt concern and Plaintiff's decedent (hereafter referred to as Keck) was experienced in the physical operation of the packing house. Neither Keck nor Sebring were financially able to purchase or operate the house despite its obsolescence. Harshman and Schumacher were interested in having a packing house convenient to their grove interests. Mr. Harshman arranged for his mother to lend money to Keck and Sebring to form the corporation and buy the packing house. Schumacher and Harshman advanced funds. Of the 140 share of corporate stock, Keck received 35 and Sebring 105, but Schumacher and Harshman were given an option to purchase 70 of Sebring's shares or the equivalent of one-half of the total authorized and issued stock. Sebring considered Schumacher and Harshman to be the owners of the half interest and were always consulted in any major decisions. Salaries were paid by the corporation to Sebring and Keck who devoted full time to the corporate business. Profits were plowed back into improving equipment and facilities as Schumacher and Harshman desired this action. Groves were purchased as the corporation prospered. The operation was in all respects in accord with the corporate structure.
"In 1948, for reasons not reflected in the record, Sebring left the corporation turning his stock over to Schumacher and Harshman without compensation because they had already paid for it and that he had held it in trust for them all along. Upon the departure of Mr. Sebring, Harshman became President, Schumacher, Vice President and Keck, Secretary-Treasurer, and the three were the only directors, Sebring's 35 shares were returned as treasury stock leaving the three as each owning 35. Schumacher transferred 5 to his wife, 20 to a bank in trust for his children, holding a proxy to represent them in all corporate matters. With the stock thus issued, Keck had no right of control or control over the affairs of the corporation. He had no proprietary interest in the subject matter. He had no right to share in the profits and no obligation or duty to share in the losses.
"The corporation continued to prosper, with Schumacher devoting part time to the office and Keck in full charge of the physical operation  devoting full time thereto. Keck received a salary commensurate with this work and above that an *41 amount equal to the salaries of Schumacher and Harshman; until this change in 1954, Schumacher and Harshman received no compensation whatsoever. In one year when the corporation experienced a loss the three waived an equal amount of salary.
"Policies of the Exchange discourage membership of packing houses which buy and sell fruit, and Keck, Schumacher and Harshman as partners speculated by buying and selling fruit, and this business was incorporated in 1952, as Fruit Purchasers, Inc. The original incorporators were the Plaintiff, her son, Charles, and Harshman, although on organization the operation was taken over by Keck, Schumacher and Harshman. Stock ownership was evenly divided between the three. Salaries were subsequently set upon a similar formula to that of the packing company, i.e., Keck received a basic $3,000.00 for his work and then each received a salary equal to 20% of net income in excess of 10% of the net worth of the company.
"The two companies prospered and there is no evidence of any discord or even disagreement between the three. Activities of Schumacher and Harshman, now complained of, were not objected to by Keck, although it is inconceivable that he was not fully aware of them.
"Mr. Keck died and Mrs. Keck was elected to his position on the Board of the corporations and as an officer. She was unquestionably untrained to assume his duties. Salaries were set equally for her, Schumacher and Harshman, with a base salary for Schumacher who took over the physical operation of the plant.
"Only twice in the history of the two companies were dividends declared.
"The pleasant atmosphere of the operation which had existed so long disappeared as difficulties developed between Mrs. Keck on one hand and Schumacher and Harshman on the other. Mrs. Keck was not re-elected as an officer and her income in the form of salary terminated. Only one dividend was declared and that only after the institution of this litigation. She found herself in the position of owning one-third of the stock in two valuable corporations but with no income to provide for her living expenses. This inequitable position has been molligied (sic) by the dissolution of Fruit Purchasers, Inc., but continues as to the larger and more valuable corporation.
"Mrs. Keck comes into this Court seeking the dissolution of the corporation and/or the distribution of its assets on the following theories:
"a. That a certain written instrument dated August 28, 1954, signed by Keck, Schumacher and Harshman constituted a binding contract.
"b. That the business, while in form a corporation, was in fact a joint venture, and, as such, terminated at the decision of the Plaintiff.
"c. That Schumacher and Harshman, as officers of the corporation have been guilty of misusing their corporate offices and majority control of the corporation to their individual benefit and so as to deprive Plaintiff of her property and to require, for her protection, the dissolution of the corporation and/or the distribution of one-third of its assets to her."
The Chancellor found for the Defendant Appellees and against the Plaintiff Appellant hence this appeal.
Appellant's first point is stated as follows:
"The written instrument, dated August 28, 1954, executed by appellees, W.W. Harshman, F.M. Schumacher and the appellant's deceased husband, L.E. Keck, is a contract between the parties that equity should require the appellees specifically to perform."
*42 The alleged agreement contains the following language.
"TO WHOM IT MAY CONCERN:
We, the undersigned, being the owners of the grove known as the Redlands Grove and being the principal stockholders of the Sebring Fruit Purchasers, Inc. and the Sebring Packing Company, Inc., have concluded that it is to the best interest of ourselves and our families to record our ideas as to what should occur after the death of one of us to divide our holdings and to ameliorate the financial loss that might occur to the survivors and our loved ones in the event such division would be left to the Courts. We feel that our knowledge of our holdings and the workings of them more properly fit us for outlining a division and that it is appropriate that our combined opinions be available as a guide when the need might arise. It is not our intention to make this suggested division binding to the heirs of the one preceding the others in death, but we earnestly suggest that the procedure to be outlined below be followed."
The agreement then provided a method of distribution.
The Chancellor determined that this document was never a contract and we agree.
We note the document states that the parties did not intend to make the division binding on their heirs.
In the case of Kislak v. Kreedian, 95 So.2d 510, the Supreme Court of Florida stated the law to be as follows:
"The concept of a contract is one well recognized in law. It is a legal relationship. It contemplates an agreement enforceable at law between two or more parties for the doing or not doing of some specific thing. A contract must create legal obligations."
In Williston on Contracts, Third Edition, Volume 1, Section 21, we find this statement:
"It is indeed true that if the parties to an agreement undertake that no legal obligation shall be created, their undertaking in this regard will be respected by the law."
It was the express intent of the parties who executed this document that the same was advisory, not binding. The Court has no authority to interfere with the express intent of the parties.
The second point raised by Appellant as stated by the Chancellor is as follows:
"That the business, while in form a corporation, was in fact a joint venture, and, as such, terminated at the decision of the Plaintiff."
We are concerned with Sebring Packing Company, so the question to be considered is whether or not prior to the time of the organization of Sebring Packing Company there was a joint venture agreement to run and operate the packing company for a period of time terminable at the will of the parties and in which were present all the other requirements for a joint venture.
In Kislak v. Kreedian, supra, we find a statement of the requirements of a joint venture as follows:
"In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained. 48 C.J.S. Joint Adventures § 2, p. 809 and the authorities there referred to."

*43 "The relationship must arise out of a contract, express or implied. Such a contract is an indispensable prerequisite:
`As between the parties, a contract is essential to create the relation of joint adventurers. The contract need not, however, be expressed or be embodied in a formal agreement, or particularly specify or define the rights and duties of the parties. It may be inferred from the conduct of the parties or from facts and circumstances which make it appear that a joint enterprise was in fact entered into. The consideration for a contract of joint adventure may be a promise, express or implied, to contribute capital or labor to the enterprise.' 30 Am.Jur. Joint Adventures Sec. 9, p. 681."
We find nothing in the facts of the case at bar to support a finding that the parties intended to create a joint venture.
The third point raised by Appellant as stated by the Chancellor is as follows:
"That Schumacher and Harshman, as officers of the corporation have been guilty of misusing their corporate offices and majority control of the corporation to their individual benefit and so as to deprive Plaintiff of her property and to require, for her protection, the dissolution of the corporation and/or the distribution of one-third of its assets to her."
The Chancellor found evidence of some improper conduct on part of the appellee officers of the corporation, but insufficient for the dissolution of the corporation. The record supports the Chancellor's findings on this point, consequently the same will not be disturbed on appeal.
The decree appealed from is amply supported by the record and no error having been established, it must be and is hereby affirmed.
Affirmed.
LILES, Acting C.J., and PIERCE, J., concur.