**Philip A. BROWNING, Jr., Plaintiff–Counterclaim Defendant–Appellant,**

**v.**

**Herbert H. PEYTON, Jr., individually, d/b/a Gate Lands Company, Gate Petroleum Company, a Florida corporation, Defendants–Counterclaim Plaintiffs–Appellees.**

Nos. 89–3671, 89–4098.

United States Court of Appeals, Eleventh Circuit.

Dec. 14, 1990.

Edward T.M. Garland, The Garland Firm, P.C., John L. Taylor, Vincent, Chorey, Taylor & Feil, Atlanta, Ga., for plaintiff-counterclaim, defendant-appellant in No. 89–3671.

Robert T. Hyde, Jr., Michael J. Dewberry, Rogers, Towers, Bailey, Jones & Gay, P.A., Walter G. Arnold, Arnold & Stratford, P.A., Jacksonville, Fla., for defendants-counterclaim plaintiffs-appellees in No. 89–3671.

Edward T.M. Garland, Robin N. Loeb, The Garland Law Firm, John L. Taylor, Michael A. Cole, Vincent, Chorey, Taylor & Feil, Atlanta, Ga., William J. Sheppard, Sheppard & White, Jacksonville, Fla., for plaintiff-counterclaim defendant-appellant in No. 89–4098.

Walter G. Arnold, Arnold and Stratford, K. Alexandra Krueger, Michael J. Dewberry, Rogers, Towers, Bailey, Jones & Gay, Cindy A. Laquidara–Kenney, Commander, Legler, Werber, Dawes, Sadler & Howell, P.A., Haywood M. Ball, Jacksonville, Fla., for defendants-counterclaim plaintiffs-appellees in No. 89–4098.

Before EDMONDSON and BIRCH, Circuit Judges, and RE, Chief Judge*.

RE, Chief Judge:

In this diversity action, plaintiff-appellant, Philip A. Browning, Jr., a Georgia resident, sought damages for breach of an alleged joint venture agreement, breach of fiduciary duty, fraud, conversion, unjust enrichment, and constructive trust, and also an accounting and attorney's fees against defendants-appellees Herbert H. Peyton, Jr., a Florida resident, Gate Land Company, and Gate Petroleum Company, two Florida corporations (collectively Peyton). Browning appeals from an order of the United States District Court for the Middle District of Florida, which granted

---

* Honorable Edward D. Re, Chief Judge of the U.S. Court of International Trade, sitting by designation.

Peyton's motion for summary judgment on all the claims.

Browning, a real estate investor and developer, brought this action after learning that Peyton had successfully bid on certain real estate owned by the Phillips Petroleum Company. Browning alleges that, prior to the bid submitted by Peyton, Browning had entered into a joint venture agreement with Peyton, the president of Gate Petroleum, in Peyton's individual capacity and on behalf of Gate Petroleum. Browning alleged that the joint venture was formed for the exclusive purpose of submitting a bid on the real estate owned by Phillips Petroleum. Browning contends that Peyton breached the joint venture agreement by submitting his own bid, thereby depriving Browning of the benefits of ownership and profits associated with the acquisition of the real estate.

In addition to his claim for breach of the joint venture agreement, Browning sought damages predicated on equitable claims of breach of fiduciary duty, fraud, conversion, unjust enrichment, and constructive trust. Browning also sought an accounting and attorney's fees. The district court, finding no genuine issue of material fact, concluded that no joint venture agreement was formed, and granted Peyton's motion for summary judgment as to all claims.

Browning contends that the district court erred in determining that there was no genuine issue of material fact, and that Browning and Peyton had not entered into a joint venture agreement. Browning also contends that the district court erred in having granted Peyton's motion for summary judgment on the equitable claims.

Three questions are presented on this appeal:

(1) whether the district court erred in determining that there was no genuine issue of material fact, and that Browning and Peyton had not entered into a joint venture agreement for the purpose of acquiring certain real estate owned by Phillips Petroleum;

(2) whether the district court erred in granting Peyton's motion for summary judgment on Browning's various equitable claims; and

(3) whether the district court erred in denying Browning's claim for attorney's fees.

In agreement with the district court we hold that there are no genuine issues of material fact as to whether there existed a joint venture agreement between the parties, and, therefore, affirm the district court's order granting summary judgment to Peyton on Browning's claim for breach of a joint venture agreement. We also affirm the district court's order denying Browning attorney fees. Since we have concluded, however, that the record presents the necessary elements for equitable relief, we reverse the court's order which granted Peyton summary judgment on Browning's equitable claims.

## BACKGROUND

In 1983, Phillips Petroleum Company decided to sell a subsidiary company it owned known as Stockton, Whatley, Davin & Company (SWD). SWD was a diversified company engaged in mortgage banking, insurance brokerage and the purchase and development of commercial and residential real estate. The real estate alone consisted of over 15,000 acres of developed and undeveloped land, including two country clubs and two operating utility companies. To effectuate the sale, Phillips retained the investment banking firm of Morgan Stanley & Company that prepared the necessary offering materials and the offering of bids. The bidding process that was established allowed three alternative bids: a bid on the real estate only; a bid on the financial services only; or a bid on both the real estate and financial services.

After learning of Phillips' desire to sell SWD, Browning, in April, 1983, met with Peyton to discuss the possibility of entering into an agreement to acquire some or all of the assets of SWD. Following an initial meeting, Peyton, in furtherance of Browning's proposal, contacted Phillips and requested assistance in entering into the bidding for SWD's assets.

On April 23, 1983, Browning obtained the offering memorandum from Morgan Stanley and met with Peyton a second time to discuss the acquisition of the SWD holdings. Browning contends that at the April 23 meeting, Peyton, acting individually and as chief executive officer of Gate Petroleum and Gate Land, agreed to form a joint venture with Browning for the purpose of submitting a bid for the acquisition of all or part of SWD. According to Browning, the joint venture was formed with Peyton to analyze and develop a bidding strategy, and, after the purchase, to form a structure for the management of SWD and to market certain of SWD's holdings.

On April 25, 1983, the parties met for a third and final time to review the offering memorandum and to discuss a bid proposal. On that date, Browning also contacted his lawyer and requested that a document be drafted entitled "Confidentiality and Non–Competition Agreement." The first paragraph of the document states that "[t]he undersigned have agreed to enter into discussions and negotiations with each other for purposes of deciding whether to participate as a group in making a proposal to Phillips Oil Company for the acquisition of [SWD]...." Although the document was given to Browning after the April 25 meeting with Peyton, it was not sent to Peyton for signature.

Browning asserts that he acted in furtherance of the joint venture, by contributing "his insight and expertise" for managing, developing, and marketing the SWD properties to be acquired. He also states that he contributed time and effort to determining whether other individuals and institutions could contribute to the joint venture.

In early May, 1983 Peyton informed Browning that he was no longer interested in acquiring the assets of SWD and, therefore, no longer wanted to participate with Browning in submitting a bid. Browning alleges that thereafter, "[i]n reliance upon the representation made by Peyton, [Browning] ceased his efforts toward the purchase of SWD or any of its holdings." Notwithstanding the representation by Peyton that he was no longer interested in acquiring the assets or submitting a bid, subsequently, on May 16, 1983, Peyton submitted a successful bid of $60,000,000 for the real estate holdings of SWD.

At the time of the events that form the basis of this lawsuit, Browning was a resident of Florida. In August, 1984, while still a resident of Florida, Browning brought suit against Peyton in the Florida state courts. Although Peyton's brief states that this suit was later dismissed by the state court, it is not otherwise mentioned by the parties, and is not an issue in this action.

After moving to Georgia, and seeking damages for breach of the joint venture agreement and the various claims, on March 10, 1987, Browning brought the present action in the United States District Court for the Middle District of Florida against Peyton, Gate Petroleum and Gate Land.

Peyton moved for summary judgment on all eight counts of Browning's complaint. Having determined that "the evidence is not sufficient to support a finding that a binding and enforceable joint venture agreement was ever created[,]" the district court granted Peyton's motion for summary judgment on the breach of the alleged joint venture claim. *Browning v. Peyton*, No. 87–00197, slip op. at 12 (M.D.Fla. July 5, 1989).

The district court also determined that "[s]ummary judgment would therefore be proper as to plaintiff's entire case because the alleged oral joint venture agreement is the foundation of all counts of the Complaint." *Id.* Accordingly, the court granted Peyton's motion for summary judgment on all claims, including Browning's claim for attorney's fees.

### STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On appeal, a district court's grant of summary judgment is entitled to *de novo* review, and "[w]e resolve all reasonable doubts about the facts in favor of the non-movant." *Tackitt v. Prudential Ins. Co. of Am.*, 758 F.2d 1572, 1574 (11th Cir.1985). *See also Beatty v. Washington Metro. Area Transit Auth.*, 860 F.2d 1117, 1119–20 (D.C.Cir.1988).

## DISCUSSION

### 1. *Joint Venture Claim*

■ Under Florida law, a joint venture is defined as "a special combination of two or more persons, who, in some specific venture, seek a profit jointly without the existence between them of any actual partnership, corporation, or other business entity." *Florida Tomato Packers, Inc. v. Wilson*, 296 So.2d 536, 539 (Fla.Dist.Ct.App.1974), *cert. denied*, 327 So.2d 32 (Fla.1976). In *Kislak v. Kreedian*, 95 So.2d 510 (Fla. 1957), the Florida Supreme Court set forth the necessary elements to be proven in order to establish the existence of a joint venture agreement. Noting that the joint venture agreement "must arise out of a contract, express or implied," the Florida Supreme Court stated further that:

> In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained.

*Id.* at 515.

The *Kislak* court also noted that, although the necessary elements of the contract must be established, the agreement between the parties need not be in writing. *See id.* Nonetheless, the court observed that "the very fact that the agreement was not reduced to writing is evidence, however slight, that no such agreement actually existed." *Id.*

On this appeal, Browning maintains that the district court erred in determining that there are no genuine issues of material fact, and that a joint venture was not formed between Browning and Peyton. He asserts that the discussions with Peyton during the April 23, 1983 meeting were sufficient to form a binding contract, even though all the details of the proposed bid for SWD's assets were not specifically fixed.

In support of his contention, Browning cites *Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp.*, 302 So.2d 404 (Fla.1974). In *Blackhawk*, the plaintiff, the offeree of an option contract, sued for specific performance. In holding that the agreement could be specifically performed, the Florida Supreme Court stated that "[e]ven though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them." *Id.* at 408.

The *Blackhawk* case, however, is distinguishable. In *Blackhawk*, the parties had entered into a written option contract for the sale of stock. The defendant offeror refused to honor the option contract. The plaintiff brought suit for specific performance, and the defendant contended that paragraph 6(b) of the option contract, which set forth the plaintiff offeree's distribution rights in the defendant offeror's shares of stock, was ambiguous. Specifically, the defendant contended "that the term 'cash-flow benefit' [contained in paragraph 6(b)] was vague and indefinite, so that the agreement was void and unenforceable." *Id.* at 406. It is clear that *Blackhawk*, which involved the interpretation of an ambiguous term or phrase in a written contract for the sale of stock, is clearly distinguishable from this case. Hence, Browning's reliance on *Blackhawk* is misplaced.

In further support of his contention, Browning cites *Granik v. Perry*, 418 F.2d 832 (5th Cir.1969). In *Granik*, the Court of Appeals for the Fifth Circuit, construing Florida law, stated that "[w]hether a joint

venture is created depends upon the intent of the parties, determined in accordance with the ordinary rules governing contracts. It may be express or implied, and little formality of agreement is required." *Id.* at 836.

It is clear, however, that *Granik* is also distinguishable. In *Granik*, which involved the sale of a television station, the plaintiff Granik sued the defendants for breach of a joint venture contract. The plaintiff also alleged the equitable claims of breach of a fiduciary relationship, and tortious interference with a business relationship. *See id.* at 835. The district court granted the defendants' motions to dismiss on summary judgment on all of the plaintiff's claims.

On appeal, although the court of appeals reversed, it is to be noted that it did not reverse exclusively on the basis of the joint venture claim. Rather, as indicated by the following quotation, the court reversed on the basis of a possible "fiduciary obligation" or "under the broader sweep of fiduciary relationships." The court specifically noted that:

> It is not possible on this record to ascertain whether [one of the defendants] entered into a joint venture under which he acquired a fiduciary obligation to Granik and Cook [Granik's co-adventurer], nor whether under the broader sweep of fiduciary relationships in general he was barred from acquiring the television permit to the exclusion of Cook and Granik or from using for his sole benefit information acquired in his fiduciary capacity.

*Id.* at 837. Hence, although the *Granik* court did not specifically rule on the elements necessary to form a joint venture, it is true that it cast light on the equitable claims as separate causes of action.

Beyond the law of joint ventures, it is a fundamental principle of contracts that in order for a contract to be binding and enforceable, there must be a meeting of the minds on all essential terms and obligations of the contract. *See O'Neill v. Corporate Trustees, Inc.*, 376 F.2d 818, 820 (5th Cir.1967) (construing Florida law). Here, the district court held that there was no agreement on several essential terms. There was no agreement or understanding between Browning and Peyton as to the specific assets which were to be acquired. The bid price was never discussed and no documents were ever exchanged between the parties. Indeed, the only document drafted was a confidentiality and non-competition agreement which states that the parties had "agreed to enter into discussions and negotiations." The document, however, was neither signed by Peyton, nor is it alleged whether he ever saw it.

Since the existence of a contract is the first essential element of a joint venture agreement, we need not consider the other elements set forth by the Florida Supreme Court in *Kislak*. Since Browning and Peyton had not agreed upon the specific subject matter or bidding price for the assets being sold by SWD, there is no genuine issue of material fact as to the existence of a joint venture. Hence, we hold that the district court did not err in granting Peyton's motion for summary judgment on the breach of the joint venture claim.

## 2. Equitable Claims

Browning's remaining substantive claims against Peyton, for breach of fiduciary duty, fraud, conversion, unjust enrichment, constructive trust, and a request for an accounting, are all grounded in equity.

Equitable relief traces its origins to the remedies fashioned by Chancery, as a court of conscience. Equity has been defined as "a special function or authority of the courts to dispense with fixed legal rules, to limit their generality, or to supplement their defects in particular cases, ... in obedience to the dictates of natural right, or morality, or conscience." 1 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 45 (5th ed. 1941). *See also Collins v. Blantern*, 2 Wils. 341, 350, 95 Eng.Rep. 847, 852 (K.B.1765) (Wilmot, C.J.).

In this diversity case, we are to act as if we were judges of the State of Florida, applying Florida law. *See Coastal Petroleum Co. v. U.S.S. Agri–Chemicals*, 695 F.2d 1314, 1319 (11th Cir.1983). In keeping

with the tradition of the early chancellors who administered equity, in Florida, it has been noted that "courts of equity came into being in order to provide a forum for the granting of relief in accordance with the broad principles of right and justice in cases where the restrictive technicalities of the law prevented the giving of relief." *Hedges v. Lysek*, 84 So.2d 28, 31 (Fla.1955). *See also River Holding Co. v. Nickel*, 62 So.2d 702, 703 (Fla.1952). Hence, the continuing role of equity is to provide relief, in accordance with principles of justice, when the rules of the common law do not provide a remedy. *See Ex parte Boyd*, 105 U.S. 647, 658, 26 L.Ed. 1200 (1881). Indeed, a maxim of equity states the ideal that "Equity Will Not Suffer a Wrong to Be Without a Remedy." *See, e.g., Willman v. Beheler*, 499 S.W.2d 770, 778 (Mo.1973).

In reversing the order of the district court dismissing Browning's equitable claims, we note that it is not necessary to review the substantive law of Florida on each of the equitable claims raised by Browning. An analysis of the law on four of Browning's claims, however, indicates that the district court erred in dismissing all of the equitable claims.

An example of a claim founded on a breach of a fiduciary relationship is *Quinn v. Phipps*, 93 Fla. 805, 113 So. 419 (1927), wherein the Florida Supreme Court, in discussing the concept of fiduciary or confidential relationships, stated that:

> The relation and duties involved need not be legal; they may be moral, social, domestic or personal. If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief.

*Id.* at 811, 113 So. at 421. *See also Granik*, 418 F.2d at 836; *Gammage v. Turner*, 206 So.2d 252, 255 (Fla.Dist.Ct.App.1967), *cert. denied*, 212 So.2d 870 (Fla.1968); *In re Estate of Gay*, 201 So.2d 807, 811 (Fla. Dist.Ct.App.1967).

■ In this case, the affidavits and depositions submitted by the parties raise questions of fact as to whether a fiduciary relationship had been established between Browning and Peyton.

■ There is also a question of fact as to whether a fraud had been perpetrated under the circumstances described. In order to establish fraud under Florida law, the plaintiff must show that:

> (1) the defendant knew of the falsity of the representation, (2) the plaintiff was meant to rely upon the misrepresentation, (3) the plaintiff in fact relied upon the misrepresentation and (4) the plaintiff was thereby damaged.

*Johnson v. Davis*, 449 So.2d 344, 348 (Fla. Dist.Ct.App.1984) (citing *American Int'l Land Corp. v. Hanna*, 323 So.2d 567, 569 (Fla.1975)), *approved*, 480 So.2d 625 (Fla. 1985).

Browning alleged in his complaint that Peyton agreed to submit a bid with him for the acquisition of SWD. Browning also alleges that, subsequently, Peyton informed him that Peyton was no longer interested in purchasing the assets of SWD. Notwithstanding the representations of his lack of interest, it is undisputed that, on May 16, 1983, Peyton submitted the successful bid for the real estate holdings of SWD. The affidavits and depositions submitted by Browning provide evidence in support of his claim for fraud. Furthermore, the record contains no suggestion or explanation for Peyton's submission of the successful bid after having informed Browning of his lack of interest. Hence, in view of the question of fact presented, the district court erred in granting Peyton summary judgment on the fiduciary relationship and fraud claims.

■ Furthermore, it is evident that there remain questions of fact regarding Browning's claims for unjust enrichment and for a constructive trust. *See Moses v. Macpherlan*, 96 Eng.Rep. 120 (K.B.1760) (Mansfield, C.J.) (the doctrine of unjust enrichment derives from principles of natural justice). *See also Henry M. Butler, Inc. v. Trizec Properties, Inc.*, 524 So.2d 710, 712 (Fla.Dist.Ct.App.1988); Restatement (Sec-

ond) of Restitution § 1 (Tent.Draft No. 1, 1983).

Similarly, a constructive trust "arises to prevent unjust enrichment by requiring the holder to account to the claimant as owner of the property." Restatement (Second) of Restitution § 30(3) (Tent.Draft No. 1, 1983). A constructive trust may be imposed " '[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest....' " *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121, 351 N.E.2d 721, 723, 386 N.Y.S.2d 72, 74 (1976) (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919)). It requires "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." *Sharp*, 40 N.Y.2d at 121, 351 N.E.2d at 723, 386 N.Y.S.2d at 75. *See also Quinn*, 93 Fla. at 813–14, 113 So. at 422.

As we have indicated, our decision in this case as to the equitable claims is supported by *Granik*. In *Granik*, the Court of Appeals for the Fifth Circuit reversed a decision of the district court that had granted the defendants' motion for summary judgment on both a breach of a joint venture claim and on two equitable claims. In reversing, the court of appeals expressly noted that it was not possible, on the record before it, to determine whether the defendant could be held liable to the plaintiff "under the broader sweep of fiduciary relationships in general...." 418 F.2d at 837. Hence, the court expressly recognized that, under Florida law, a plaintiff in a breach of a joint venture suit may be entitled to equitable relief, even in the absence of a valid joint venture contract.

Hence, in this case, the district court erred in granting Peyton's motion for summary judgment on the equitable claims. Accordingly, we reverse the order of the district court on counts two through seven, and remand the case to the district court.

### 3. *Attorney's Fees*

■ Browning also contends that the district court erred in granting Peyton summary judgment on Browning's claim for attorney's fees.

Pursuant to Fla.Stat. § 57.105 (Supp. 1990), the court "shall award a reasonable attorney's fee ... to the prevailing party" in a civil action if "the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the ... losing party...." In this case, however, there are justiciable issues of both law and fact. Furthermore, in reversing the order of the district court as to Browning's equitable claims, and, in remanding to the district court, we have not disposed of the merits of the case. Hence, Browning is not a "prevailing party" within the meaning of the statute. *See Steinhardt v. Eastern Shores White House Ass'n*, 413 So.2d 785, 786 (Fla.Dist.Ct.App.1982).

## CONCLUSION

We AFFIRM the order of the district court granting Peyton's motion for summary judgment on the breach of the joint venture agreement claim, and denying Browning's claim for attorney's fees. In dismissing all of the remaining claims, however, including those grounded in equity, the district court erred since we have concluded that Browning has alleged the necessary elements for equitable relief. Since there are questions of fact, Browning should have the opportunity to prove his equitable claims. Accordingly, the order of the district court which granted summary judgment against Browning on the equitable claims is REVERSED.