389 So.2d 656 (1980)
WACKENHUT Corporation, Appellant,
v.
Joseph F. MAIMONE, Appellee.
Nos. 79-2419, 79-2599.
District Court of Appeal of Florida, Fourth District.
September 24, 1980.
Rehearing Denied November 21, 1980.
*657 Richard H.W. Maloy of Richard H.W. Maloy & Associates, P.A., Coral Gables, for appellant.
Hal P. Dekle and Joseph Nazzaro, Tampa, for appellee.
LETTS, Chief Judge.
Involved here is an appeal from a jury verdict predicated on tortious interference with a contractual or business relationship. The jury awarded $90,000 in compensatory damages, and punitive damages in the sum of $150,000 based on civil conspiracy. We reverse, holding that the judge should have directed a verdict in favor of the defendant.
The essential facts are that the guard who successfully obtained the jury awards was employed by Wackenhut and placed in charge of providing security services for a Food Fair supermarket warehouse. Thereafter he quit his employ, formed his own security firm and, in violation of a covenant not to compete for two years[1], seduced Food Fair's custom away from Wackenhut. That seduction however is not the basis for the case now before us which instead evolves from Wackenhut's successful campaign to win back the supermarket's security custom, whereupon the instant suit against Wackenhut was filed by the ousted successor who had initiated the entire controversy by violating his covenant not to compete.
The tort of intentional interference with a contractual or business relationship has of late emerged from relative obscurity to provide a quite fashionable basis for contemporary law suits. It is not our intent here to "deep six" this venerable remedy which made its first appearance in modern times in Lumley v. Gye, 2 El. & Bl. 216, 118 Eng.Rep. 749 (1853), but we are convinced it is being misapplied, a circumstance which we hope in some measure to rectify by this opinion.
We begin, by confirming our holding in Lake Gateway Motor Inn v. Matt's Sunshine Gift Shops, Inc., 361 So.2d 769 (Fla. 4th DCA 1978) cert. den. 368 So.2d 1370 (Fla. 1979) and reiterated that this tort requires:
1. the existence of an advantageous business relationship under which the plaintiff has legal rights;
2. an intentional and unjustified interference with that relationship; and
3. damage to the plaintiff as a result of the defendant's actions.
The first and third of these requirements present little problem in definition or determination, but the second involves the application of words such as "unlawful" "intentional" "unjustified" "malicious" "interfering" and the like. As the Harvard Law Review characterizes these expressions, they are "... an agglomeration of catch-words" which have come into usage because of "... the search, foredoomed to failure, for a rule of thumb which will justly dispose of any set of facts with the precision of a cream-separator" 37 Harv.L.Rev. 143, 144 (1924). No doubt we cannot now achieve such precision where so many others have failed, but at least we can do so relative to this particular case and thus help preserve the competitive free enterprise system which forms the basis for the American economy and our very way of life.
Conceding that the intention to interfere with a contractual or business relationship is present under the facts of this case, we must first decide what the ultimate purpose and object was in so interfering. There can be no doubt that the ultimate purpose here was to regain lost business and there is nothing wrong with that. *658 Competition for business is not per se an actionable interference even though it is intentional. However, as Dean Prosser puts it, we must agree that the modern day concept of the tort here considered supports the theory that clear allegations of an intentional interference with an existing contractual or business relationship, coupled with legal rights and damage, state a prima facie case. William L. Prosser, Torts 942 (4th Ed. 1971). Thus we agree that in the face of such allegations the burden shifts to the interferer to establish that the interference was justified. In the words of Dean Prosser, this "justification" is better understood as a showing that the "... interference is privileged by reason of the interests furthered by his conduct... Where the contract interfered with is terminable at will, the privilege of competition has been recognized. In such a case there is no contract right to have the relation continued, but only an expectancy... . With such an expectancy ... a competitor has the privilege of interference in order to acquire the business for himself." Prosser, supra, 943 [emphasis supplied].
We agree with and adopt this statement and agree further that it encompasses employment contracts as well as contracts for goods and other services. Applying our adoption to the case at bar, the contract here was terminable by either party upon 30 days notice and absent a showing that Wackenhut sought to short circuit payment for the security services during any such 30 days, there was nothing wrong with Wackenhut's solicitations for the business.
Passing now to whether Wackenhut sought the recovery of its lost custom spitefully or with personal malice, we agree completely with Judge Schwartz who, in the case of Ethyl Corporation v. Balter, 386 So.2d 1220 (Fla. 3d DCA Case No. 78-994, opinion filed July 8, 1980), opined that if the privilege to protect or further ones legitimate economic situation is present, the concomitant presence of malice or ill will, and the expression thereof, is not actionable as a tortious interference.
As to the case at bar, we have studied the record and find nothing which would support a tortious interference action even in compensatory damages. A fortiorari, as to the punitive aspect, this cause must be reversed. See Lake Gateway, supra, at p. 772 and Porter v. Wilson, Walch, Fortner, Robinson, 384 So.2d 190 (Fla.2d DCA 1980).
REVERSED AND REMANDED FOR ENTRY OF A JUDGMENT IN ACCORDANCE HEREWITH.
ANSTEAD and HURLEY, JJ., concur.
NOTES
[1] Maimone v. Wackenhut Corporation, 329 So.2d 332 (Fla. 3d DCA 1976) cert. den. 342 So.2d 1102 (Fla. 1977). Note the two year covenant has long since expired.