468 So.2d 1075 (1985)
Donald W. McINTOSH, Frances M. Farina, Robert W. Geyer, S. Nash, Edith Friedman and Herbert Spahn, and Other Persons Similarly Situated, Appellants,
v.
HARBOUR CLUB VILLAS CONDOMINIUM ASSOCIATION, Shores Condominium Association, Inc., and Quayside Associates, Ltd., Appellees.
No. 84-1162.
District Court of Appeal of Florida, Third District.
May 14, 1985.
Ress, Gomez, Rosenberg & Howland and Sheldon Rosenberg, North Miami, for appellants.
Lapidus & Stettin and Richard L. Lapidus, Miami, for appellees.
Before HENDRY, NESBITT and FERGUSON, JJ.
PER CURIAM.
This appeal questions the correctness of a summary final judgment rendered in favor of the appellees/defendants in an action in which appellants sought damages because they were denied the right to participate in the proceeds of a three million dollar settlement of a zoning case in which appellants claim to be parties in interest.[1]
*1076 Upon consideration of the record, briefs and arguments of counsel, we have concluded that material issues of fact remain, precluding the entry of a final summary judgment. Accordingly, the judgment appealed is reversed and the cause is remanded for further proceedings.
Reversed and remanded.
NESBITT, Judge, specially concurring:
I agree with the majority that material issues of fact remain and that, therefore, the entry of a final summary judgment was error. It is my view, however, that this court should point out with more specificity where those issues exist to provide some guidance to the trial court and counsel on remand. It is for this purpose that I specially concur.
The general facts relevant to this appeal are set out in the decision rendered in the prior appearance of this case before this court. See McIntosh v. Harbour Club Villas Condominium Association, 421 So.2d 10 (Fla. 3d DCA 1982) (McIntosh I). The plaintiffs are a group of individuals residing within the geographic area adjacent to Quayside, a real estate project. The plaintiffs joined together with two of the defendants herein, the Harbour Club Villas Condominium Association (Villas) and the Shores Condominium Association, Inc. (Shores), to fight a zoning variance authorized by the Metropolitan Dade County Commission (Commission) in favor of Quayside. The parties contributed money to a legal fund to pay the legal fees of appealing and having declared void the decision of the Commission. In addition to contributing to the legal fund, the plaintiffs herein undertook a number of activities to try to gain public support for their position. The attorneys whose services were engaged appeared before the Commission and ultimately filed appeals with the circuit court and this court. These suits were instituted solely in the name of the Villas and the Shores, however, with none of the plaintiffs herein named as plaintiffs in those suits. Prior to the determination of the appeal by this court, the Villas and the Shores independently settled with Quayside. The Shores' settlement involved property improvements while the Villas' settlement was in the amount of $3 million. The settlements resulted in the dismissal of the appeal and foreclosed any possibility that the plaintiffs herein could obtain zoning relief.
The plaintiffs filed a seven-count complaint against the Villas, the Shores, Quayside and the attorneys. The complaint was initially dismissed on the ground that the agreement from which the plaintiffs' cause of action arose was champertous. This court reversed that dismissal and ordered the complaint reinstated upon a holding that the agreement was not champertous on its face because the plaintiffs had an interest in the appeal of the zoning variance decision and were not merely strangers or intermeddlers. McIntosh I. After remand, the defendants filed a motion for summary judgment. The trial court found that no issues of material fact existed and entered final summary judgment as to all counts in favor of the defendants. The plaintiffs have appealed.
In the first count of their complaint, the plaintiffs seek damages from the Villas and the Shores for breach of contract. Contracts recognized at law have been divided into a number of categories. One such division involves the distinction between bilateral and unilateral contracts. A bilateral contract is usually defined as one founded upon mutual promises to do something in the future, in which the consideration of the one party is the promise on the part of the other, each party being both a promisor and a promisee. See 11 Fla. Jur.2d Contracts § 6 (1979) and authority cited. It is a general rule of contract law that in order to form a bilateral contract there must be mutuality of obligation. See generally 11 Fla.Jur.2d Contracts § 15 (1979) and cases cited. In the present case, mutuality is lacking. The plaintiffs have not alleged, and the undisputed facts are not susceptible to the inference, that the plaintiffs were contractually obligated to the defendants to contribute their money to *1077 the legal fund or their time to gaining public support. Accordingly, since there was no mutuality of obligation, there was no bilateral contract between the parties.
The doctrine of mutuality, however, does not apply to unilateral contracts. A unilateral contract is not based on mutual promises and it is said to lack mutuality at the outset. See generally 11 Fla.Jur.2d Contracts § 6 (1979) and cases cited. The factual allegations in the complaint along with the exhibits attached thereto and other material in the record raise genuine issues of material fact as to whether or not a unilateral contract exists in the present case. For instance, the plaintiffs may be able to prove to a jury's satisfaction that the Villas and the Shores promised to use every available legal recourse to have the Commission's zoning decision overturned if the plaintiffs contributed money to the legal fund and undertook other activity which might help the cause, the defendants' promise acting as offer and consideration to the plaintiffs and the plaintiffs' actions in contributing their money to the legal fund and their time to gaining public support acting as acceptance and consideration to the defendants.
Another division of contracts recognized at law distinguishes between express contracts and contracts implied in fact. It is often stated that the only difference between an express contract and one implied in fact is that in the former the parties arrive at their agreement by words and in the latter the agreement is arrived at by consideration of the parties' actions and conduct. 11 Fla.Jur.2d Contracts § 3 (1979). Although the plaintiffs have made a valiant effort to allege facts which might lead to an inference that an express bilateral contract was entered between the parties, such an inference does not withstand scrutiny when the pleadings are pierced pursuant to the motion for summary judgment. On the other hand, the pleadings, exhibits attached thereto and other record material do raise genuine issues of fact as to whether the plaintiffs can recover under the theory of contract implied in fact. See generally 11 Fla.Jur.2d Contracts §§ 228-35 (1979).
Accordingly, it was error for the trial court to enter summary judgment on the plaintiffs' count for breach of contract. I would emphasize, however, that this is in no way an expression on the merits of the plaintiffs' contractual claim. The plaintiffs still must prove all the facts necessary to establish contractual liability on the part of the defendants, including the mutual assent of the parties upon which all contracts recognized at law are based.
In the second count of their complaint, the plaintiffs state a cause of action against the Villas and the Shores in quasi contract, or contract implied in law. Unlike contracts recognized at law, quasi contracts are equitable in nature and do not rest upon the assent of the parties. A quasi contract is an obligation imposed by law on the grounds of justice and equity, usually to prevent unjust enrichment. See Nursing Care Services, Inc. v. Dobos, 380 So.2d 516 (Fla. 4th DCA 1980). See generally 11 Fla.Jur.2d Contracts § 236 (1979). Where money is paid by one party in contemplation of some action to be done by another, and the thing stipulated to be done is not done, an action will lie in quasi contract to recover the money paid. See 11 Fla.Jur.2d Contracts §§ 238-39 (1979) and cases cited.
Certainly, it is undisputed that some understanding existed between the parties in the present case that the Villas and the Shores would fight, on behalf of themselves and the plaintiffs, the Commission's zoning decision in favor of Quayside. The extent of the understanding as to how long the defendants would fight the decision (or whether they could settle), however, is not clear from the record before us. Genuine issues of fact exist as to the understanding between the parties and, thus, whether the plaintiffs can recover monies paid or for services rendered on a quasi contract theory. Accordingly, the entry of summary judgment for the defendants on the plaintiffs' quasi contract count was error. See 11 Fla.Jur.2d Contracts §§ 236-46 (1979).
*1078 In counts three and four of their complaint, the plaintiffs seek recovery against the Villas and the Shores for breach of a fiduciary duty arising from a joint venture and imposition of a constructive trust on the basis of unjust enrichment.[1] Initially, the plaintiffs allege that a joint venture was entered into between themselves, the Villas, and the Shores for the purpose of maintaining legal proceedings to oppose the Quayside project. A mere allegation that a joint venture was created, however, is purely a legal conclusion and insufficient. Facts must exist which support such a conclusion. Kislak v. Kreedian, 95 So.2d 510, 514 (Fla. 1957). The factual elements necessary for a joint venture to exist have been stated by the supreme court in Kislak:
It is an elemental principle that the relationship of joint adventurers is created when two or more persons combine their property or time or a combination thereof in conducting some particular line of trade or for some particular business deal. There must be an agreement to share jointly on some agreed basis in not only profits but also losses. The relationship must arise out of a contract, express of implied. Such a contract is an indispensable prerequisite... .
... .
In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained. [citations omitted]
95 So.2d at 515.
Although I would be reluctant, in any case, to extend the concept of joint venture beyond the business context to which it is normally confined, the facts of the present case would not support such an extension. As the supreme court pointed out in Kislak, inherent in any true joint venture "is the right and the authority of any one of the co-adventurers to bind the others with reference to the subject matter of the co-adventure." 95 So.2d at 516. It is abundantly clear that the plaintiffs herein had no authority to bind the Villas or the Shores with regard to their appeal of the zoning decision. There are simply no facts which would support an inference that the plaintiffs had and could exercise joint control, which the supreme court has held is an essential element of a joint venture. Kislak. Accordingly, no joint venture existed between the parties in this case.
The conclusion that no joint venture exists, however, does not foreclose the plaintiffs' ability to bring a cause of action for breach of fiduciary or confidential relationship and for the imposition of a constructive trust. It is generally held that a constructive trust may arise where property has been acquired through a breach of a confidential relationship. See generally 56 Fla.Jur.2d Trusts §§ 94, 96 (1985) and cases cited. This general rule is not limited in its application by a narrow definition of the confidential relationship protected. The supreme court has held:
The term "fiduciary or confidential relationship," is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused  in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in and relies upon another.
... .
The relation and duties involved need not be legal; they may be moral, social, domestic or personal. If a relation of trust and confidence exists between the parties *1079 (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. The origin of the confidence is immaterial.
... .
[I]t is essential that a confidential relation be established before a constructive trust will be raised, but [it] is not essential that such confidential relation be predicated on that of husband and wife, parent and child, guardian and ward, attorney and client, principal and agent, or partner and partner, as some of the authorities may seem to imply. The test is whether or not the relation is in fact shown to exist. The origin of the confidence is immaterial, and the relation may be legal, moral, social, domestic, or personal.
Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 420-22 (1927). See generally 56 Fla.Jur.2d Trusts §§ 94-103 (1985).
In the present case, genuine issues of material fact remain as to whether or not the requisite confidential relationship existed between the plaintiffs and the Villas and the Shores. Accordingly, it was error to enter summary judgment for the defendants on these counts. Again, I would emphasize that this is in no way an expression on the merits of the plaintiffs' underlying claim. As the supreme court pointed out in Quinn, "a constructive trust may be proved by parol testimony, but ... the evidence to establish such a trust must be so clear, strong and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust." 113 So. at 424. See Brown v. Vining, 334 So.2d 647, 649 (Fla. 3d DCA 1976) (a constructive trust must be proved by clear and convincing evidence).
In their fifth count, the plaintiffs seek damages against Quayside for tortious interference with their "contract" with the Villas and the Shores. Florida courts have recognized the existence of a cause of action for wrongful interference with contractual rights when this interference is by a third person. Days v. Florida East Coast Ry., 165 So.2d 434, 436 (Fla. 3d DCA 1964) and cases cited. The elements of this tort are: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege;[2] (5) damages resulting from the breach. McDonald v. McGowan, 402 So.2d 1197, 1201 (Fla. 5th DCA), review dismissed, 411 So.2d 380 (Fla. 1981). See also Heavener, Ogier Services, Inc. v. R.W. Florida Region, Inc., 418 So.2d 1074, 1076 (Fla. 5th DCA 1982); Wackenhut Corp. v. Maimone, 389 So.2d 656, 657 (Fla. 4th DCA 1980), review denied, 411 So.2d 383 (Fla. 1981); Ethyl Corp. v. Balter, 386 So.2d 1220, 1223 (Fla. 3d DCA 1980), review denied, 392 So.2d 1371 (Fla.), cert. denied, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981). Thus, a cause of action for tortious interference with a contract will not exist if the complained-of actions of the defendant are justified or privileged. Wackenhut Corp., 389 So.2d at 658. Actions taken to safeguard or promote one's own financial or contractual interests are held to be privileged and entirely non-actionable. Ethyl Corp., 386 So.2d at 1225 and authority cited. See also Bruce v. American Development Corp., 408 So.2d 857 (Fla. 3d DCA 1982); Wackenhut Corp., 389 So.2d at 658.
In the present case, the plaintiffs allege that Quayside tortiously interfered with the contractual agreement to oppose the Quayside project entered between themselves and the Villas "by inducing the Villas to accept a settlement sum of $3,000,000 to dismiss [the appeal], thereby terminating such legal action, in breach of the [plaintiffs'] agreement with the VILLAS. *1080 ..." Certainly a defendant in any civil action has a right to try to induce his opponent to settle if he finds it advantageous. Under the undisputed facts of the present case, Quayside was justified in protecting its own financial interest by inducing the Shores and the Villas to settle, thus, disposing of the legal opposition to the zoning variance favorable to its project. Accordingly, no cause of action exists against Quayside for tortious interference with a contract and the trial court properly entered summary judgment for Quayside on this count. See Days, 165 So.2d at 436. See also Wackenhut Corp.; Ethyl Corp. Cf. Brynwood Condominium, Inc. v. Harbour Club Villas Condominium Association, 436 So.2d 1080, 1082 (Fla. 3d DCA 1983) ("Those persons who brought the initial appeal represented only themselves and they had a right to dismiss their litigation.").
In their sixth count, the plaintiffs sue Quayside and the Villas alleging to be a third-party beneficiary of the settlement agreement. Florida has long recognized that a third party who is an intended beneficiary of a contract may sue on the contract for damages resulting from the acts of one of the parties to the contract. Weimar v. Yacht Club Point Estates, Inc., 223 So.2d 100, 102 (Fla. 4th DCA 1969) and cases cited. In order to sustain an action instigated by an alleged party beneficiary, however, the plaintiff must plead the contract which was expressly for his benefit and one under which it clearly appears that he was a beneficiary. Id. Incidental beneficiaries cannot sue on the contract. Id. at 103.
The plaintiffs' own pleadings clearly demonstrate that the plaintiffs were not intended beneficiaries of the Villas-Quayside settlement agreement. In fact, the plaintiffs' claims indicate that not only were the plaintiffs not intended beneficiaries, they were not beneficiaries of any kind to the settlement agreement. The plaintiffs' entire case is premised on the charge that it was the settlement agreement that caused the "injury"; there are no facts which would support a finding that the settlement agreement was entered for their benefit. Accordingly, the trial court properly entered summary judgment for the Villas and Quayside on the third-party beneficiary count.
In their final count, the plaintiffs seek a declaratory judgment declaring their rights as against the Shores and the Villas, in and to the economic or monetary benefits derived from the settlements with Quayside. The purpose of the declaratory judgment act, ch. 86, Fla. Stat. (1983), is to afford relief from insecurity and uncertainty with respect to rights, status and other equitable or legal relations, and the act is to be liberally construed, § 86.101, Fla. Stat. (1983). The granting of such relief, however, remains discretionary with the court, and is not the right of a litigant. Kelner v. Woody, 399 So.2d 35, 37 (Fla. 3d DCA 1981) and cases cited. Although declaratory relief is not precluded by the existence of another adequate remedy, § 86.111, Fla. Stat. (1983), such does bear on the proper exercise of the court's discretion in granting such relief, and the court may decline to grant a declaratory decree where more appropriate redress is available. Kelner, 399 So.2d at 38 and cases cited. See generally 19 Fla.Jur.2d Declaratory Judgments §§ 16-17 (1980). The supreme court has held that the legislature, in enacting section 86.111, Florida Statutes (1983),[3] did not intend to abrogate "the almost universal rule" that:
if at the time the proceeding for a declaratory decree is initiated a suit is already pending which involves the same issues and in which litigation the plaintiff in the declaratory decree action may secure full, adequate and complete relief, such bill for declaratory decree will not be permitted to stand.
Taylor v. Cooper, 60 So.2d 534, 535-36 (Fla. 1952). See also Burns v. Hartford Accident & Indemnity Co., 157 So.2d 84 *1081 (Fla. 3d DCA 1963). Accordingly, a trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief. See Kies v. Florida Insurance Guaranty Association, 435 So.2d 410, 411 (Fla. 5th DCA 1983).
In the present case, the plaintiffs have pending before the court actions for breach of contract, quasi contract, breach of confidential relationship and imposition of a constructive trust. Resolution of the issue in those pending counts will provide the plaintiffs with full, adequate and complete relief. In effect, the plaintiffs, in their final count, are actually seeking legal advice from the court as to the correct procedure to follow in litigating this case. The declaratory judgment act is not to be used as a tool to advise attorneys as to the proper path to pursue. Kelner, 399 So.2d at 38 and cases cited. Accordingly, the trial court was correct in denying the plaintiffs declaratory relief pursuant to the final count of the complaint.
Upon the foregoing analysis, I concur with the majority that genuine issues of material fact exist and that, therefore, the summary judgment was improperly entered. I would further find, however, that summary judgment was properly entered as to counts five, six and seven of the plaintiffs' complaint. Again, I would emphasize that the above analysis should not be construed as any expression of opinion on the merits of the plaintiffs' claims in counts one through four. The merits remain to be determined after the facts have been fully developed at trial.
FERGUSON, J., concurs.
NOTES
[1] For further facts concerning this litigation, see: Brynwood Condominium, Inc. v. Harbour Club Villas Condominium Association, 436 So.2d 1080 (Fla. 3d DCA 1983); Williams, Salomon, Kanner, Damian, Weissler & Brooks v. Harbour Club Villas Condominium Association, Inc., 436 So.2d 233 (Fla. 3d DCA 1983); McIntosh v. Harbour Club Villas Condominium Association, 421 So.2d 10 (Fla. 3d DCA 1982); Quayside Associates, Ltd. v. Harbour Club Villas Condominium Association, Inc., 419 So.2d 678 (Fla. 3d DCA 1982).
[1] Count III is actually styled: Joint Venture, Fiduciary Relationship and Agency; and Count IV: Unjust Enrichment and Constructive Trusts. Reading the two counts together, the plaintiffs have stated an action for the imposition of a constructive trust due to a breach of a confidential relationship.
[2] There is some question as to whether a plaintiff must prove the interference was unjustified, or whether justification is a matter of defense with the burden of proof on the defendant. See Heavener, Ogier Services, Inc. v. R.W. Florida Region, Inc., 418 So.2d 1074, 1076 n. 6 (Fla. 5th DCA 1982) and cases cited. The matter is irrelevant in the present case, however, since the facts are undisputed as to this issue.
[3] The actual statute referred to by the court was section 87.12, Florida Statutes (1951), which was substantially the same as the present section 86.111, Florida Statutes (1983).