The CAPPS AGENCY, INC., Plaintiff,

v.

MCI TELECOMMUNICATIONS
CORPORATION,
Defendant.

No. 91–855–CIV–ORL–19.

United States District Court,
M.D. Florida,
Orlando Division.

May 7, 1993.

Harry G. McConnell, Monaco, Smith, Hood, Perkins, Orfinger & Stout, Daytona Beach, FL, for plaintiff.

Rebecca A. Henson, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, Laura B. Brody, MCI Telecommunications Corp., Douglas G. Bonner, Washington, DC, for defendant.

### ORDER

FAWSETT, District Judge.

This case comes before the Court upon Plaintiff's Motion for Partial Summary Judgment (Doc. No. 47, filed February 1, 1993), Defendant MCI Telecommunications Corporation's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. No. 60, filed March 1, 1993), Defendant MCI Telecommunications Corporation's Motion for Summary Judgment and Memorandum of Law in Support thereof (Doc. No. 48, filed February 1, 1993), Plaintiff's Memorandum Opposing Defendant's Motion for Summary Judgment (Doc. No. 53, filed February 16, 1993) and Supplement to Plaintiff's Memorandum Opposing Defendant's Motion for Summary Judgment (Doc. No. 67, filed April 9, 1993). The Court also has considered the following: Affidavit of Reggie W. Capps, Affidavit of Ronald L. Benjamin, Affidavit of Robert E. Cowart, Defendant's Response to Interrogatories, Defendant's First Set of Interrogatories, Affidavit of Alexander Markobrada, Affidavit of Michael L. Hartley, Depositions of Reggie Capps, Robert Cowart and Ronald L. Benjamin.

Plaintiff The Capps Agency, Inc. ("Capps") brings this action against Defendant MCI Telecommunications Corporation ("MCI") alleging misrepresentation and seeking the imposition of a constructive trust over funds allegedly held by MCI (Doc. No. 3). MCI brings a counterclaim against Capps seeking payment of amounts allegedly due for telecommunications services provided to Capps by MCI (Doc. No. 34).

Capps filed its Complaint in state court and MCI removed to this Court on the basis of diversity jurisdiction (Doc. No. 1). Both parties move for summary judgment. In its Motion for Partial Summary Judgment (Doc. No. 47), Capps moves the Court to enter summary judgment on its claim for the imposition of a constructive trust. MCI moves the Court to enter summary judgment (Doc. No. 48) in its favor on both counts of Capps' Complaint.

### Statement of Facts

Capps was in the business of providing consumer information over the telephone. Capps advertised its services on television and provided a 900 number so consumers could call Capps for further information.

In addition to Capps, the "information provider," there are three other entities involved in the billing process associated with Capps' business of providing information to callers via 900 numbers. These entities include: the local telephone company, the 900 telephone line provider, and the long distance network.

Capps contracted with Communications Management and Information, Inc. ("CMI") which was the corporation that made available to Capps, for a monthly fee, services related to answering, processing and handling calls made by the public to 900 telephone numbers. CMI was the "service bureau" which provided a voice response or recorded message response service, procured a long distance network to access the calls and collected the fees on behalf of Capps.

CMI contracted with MCI to provide the long distance network and billing and collection services. In turn, the local phone companies may perform billing and collection

services for MCI 900 services under separate agreement between the local phone company and MCI.

A Capps' customer would be billed by his or her local phone company for the 900 telephone call. The customer submits payment for the 900 call to the local phone company which retains a portion of the customer's bill for its own service and passes the remainder of the funds to MCI. Likewise, MCI retains a portion of those funds for the use of the 900 number and passes the remaining funds to CMI. CMI withholds a portion of the funds representing its fee for services to Capps pursuant to the contract executed between Capps and CMI and forwards the remaining funds to Capps.

In July 1991, when Capps did not receive payment from CMI for services rendered during the month of May, Capps learned that MCI was withholding payment to CMI based on discovered overpayments made to CMI and credits due to MCI. Upon learning of the dispute between CMI and MCI, Capps contacted MCI for information on when the funds would be forthcoming.

The inquiries made by Capps to MCI regarding the dispute between CMI and MCI constitute the basis of Capps' misrepresentation claim against MCI. Capps contends that its manager of operations, Mr. Cowart, spoke with the MCI account representative for CMI, Mr. Markobrada, on four or five occasions, and that Mr. Markobrada made the following representations to Capps: (1) MCI and CMI were "getting closer to an agreement, and that everything should be settled no later than August 1, 1991," (2) that the dispute between MCI and CMI would only affect the payment due for May, (3) that payment of the amounts due to CMI would be made soon, (4) that the attorneys for MCI and CMI were meeting and there was only one thing left to agree upon and (5) "Don't worry, you'll get your money soon."

While not refuting that contacts occurred between Mr. Cowart and Mr. Markobrada, MCI disagrees on the substance of those contacts as stated by Capps. Further, MCI maintains that (1) Mr. Markobrada's opinions on the possible resolution of the dispute between MCI and CMI may not form the foundation of a misrepresentation claim, (2) MCI had no duty to disclose information on its dispute with CMI to Capps and (3) Mr. Markobrada and/or MCI could not speak for CMI regarding a possible settlement with MCI or payments to Capps.

The dispute between MCI and CMI concerned caller credits and uncollectibles resulting in substantial overpayments from MCI to CMI that MCI was attempting to recoup. MCI sent a letter dated April 1, 1991 to CMI about new and improved testing and billing procedures for 900 calls. Capps contends that this letter was fraudulent due to its failure to mention the problem of caller credits and uncollectibles of which MCI knew at the time.

Capps contends that when MCI contracted with CMI to provide billing and collection services, MCI misrepresented its ability to account for caller credits and uncollectibles. It was not until several months after entering into an agreement with CMI that MCI had a program in place to track caller credits. Further, Capps maintains that MCI was aware of the contractual relationships between the service bureaus and the information providers, in this case CMI and Capps respectively, and that an attempt by MCI to recover the overpayments would result in no more payments by the service bureaus to the information providers.

Capps claims that there are sufficient evidentiary facts for the trier of facts to make the ultimate determination of fraud or breach of duty sufficient to impose a constructive trust. These facts include, but are not limited to the following: MCI's awareness of (1) the information providers, (2) the billing process that tracked the flow of funds from the local telephone company to MCI to the service bureau to the information provider and (3) the long-standing problem in tracking caller credits resulting in substantial overpayments. Further, Capps contends that MCI's failure to disclose the billing and overpayment problems resulted in Capps continuing to work and generate money for MCI which supports the imposition of a constructive trust.

It is undisputed that no contract exists between MCI and Capps and that the contracts between MCI and CMI and between CMI and Capps are separate and independent contracts. MCI contends that it is not a guarantor of the contract between CMI and Capps.

CMI is not a party to the instant case. Capps along with other information providers filed an involuntary bankruptcy petition for relief against CMI in the United States Bankruptcy Court for the Northern District of Georgia, Case No. 92–61432.

The counterclaim asserted by MCI concerns collecting overdue payments on Capps' 800 telephone line service. Capps contends that MCI is estopped from recovering any additional charges and has waived its right to collect on the bill which is the subject of MCI's counterclaim.[1]

On or about August 8, 1991, MCI contacted Capps about non-payment of its 800 line account. Capps explained to Mr. Williams of MCI that due to the dispute between MCI and CMI, Capps had not been paid for its services over the past few months and Capps could not pay the 800 line bill until it received its funds from CMI. Although there was no further contact with Mr. Williams, Capps was told by the secretary of Mr. Malloy, an MCI executive, that Capps' telephone bill was on Mr. Malloy's desk and that Mr. Malloy instructed MCI's collection department not to do anything to Capps' telephone lines without his approval. According to Capps, its 800 line remained in operation for several weeks after August 12, 1991 despite the non-payment.

### Conclusions of Law

■ In order to state a cause of action for fraudulent misrepresentation the following elements must be alleged according to Florida law: (1) a misrepresentation of a material fact by the defendant, (2) the defendant knew of the falsity of the misrepresentation, (3) the defendant made the representation intending that the plaintiff would rely on it, (4) the plaintiff did rely on the misrep-

resentation to his or her detriment, and (5) this reliance caused damages to the plaintiff. *Chino Electric v. U.S. Fidelity & Guaranty*, 578 So.2d 320, 322 n. 4 (Fla. 3d DCA 1991) (citations omitted). Further, to prove a cause of action for fraudulent misrepresentation, a plaintiff must show that a defendant owed him or her a duty, that the duty was breached, and that the plaintiff incurred damages proximately caused by the breach. *Lyle v. National Savings Life Insurance, Co.*, 558 So.2d 1047, 1048 (Fla. 1st DCA 1990).

■ Capps' claim against MCI for fraudulent misrepresentation fails for two reasons. First, Capps has not demonstrated that MCI owed it a duty to disclose details of the business relationship between CMI and MCI. Although Capps contends that MCI referred it to CMI and Capps thought that MCI was a party to the contract between Capps and CMI, it is undisputed that Capps and MCI did not have a contractual relationship. Capps utilized MCI's 800 line service and contacted MCI about a 900 number. MCI referred Capps to the service bureau, CMI. Absent a contractual relationship, Capps and MCI were business entities which in a "commercial society such as ours ... are generally expected to deal at arms' length with one another." *Chino Electric*, 578 So.2d at 323.

■ Secondly, "it is well settled in Florida that in order to be actionable a fraudulent misrepresentation must be a material fact, rather than a mere opinion or a misrepresentation of law." *Id.* Citing *Prosser and Keeton on The Law of Torts*, the court stated:

> The underlying rationale for this rule is that in ... the normal business transaction a person should not rely on such ephemeral matters as an opposing party's opinions, judgments, or legal views, but instead should rely on more substantial matters, namely, the opposing party's representations of fact which are material to the transaction.

*Id.*

Capps has not demonstrated that MCI's statements or representations were false

---

1. Neither party has requested the Court to enter summary judgment on MCI's counterclaim against Capps.

and/or material to the issue of when and if CMI would pay Capps. Capps assumes that CMI would have submitted payment to Capps if MCI paid CMI. However, there is no record evidence to support this assumption.[2] Further, accepting Capps' description of Mr. Markobrada's statements to Mr. Cowart for the purposes of this Motion, Capps has not established that Mr. Markobrada knew that his statements were false or that he made the statements intending Capps to rely on them.

As to the imposition of a constructive trust, "it is essential that a confidential relationship be established before a constructive trust will be raised." *McIntosh v. Harbour Club Villas Condo. Ass'n*, 468 So.2d 1075, 1079 (Fla. 3d DCA 1985). For all the reasons stated above, the Court finds that a confidential relationship does not exist between MCI and Capps. Rather, the relationship is one of business entities dealing at arms' length with each other.

Both parties had independent agreements with CMI. To impose a constructive trust would be tantamount to rewriting the contracts between CMI and Capps and between CMI and MCI. "When parties in an arms' length transaction reach an agreement supported by valuable consideration, the court will not rewrite the contract between the parties by imposing a constructive trust." *Beville v. Freeman*, 483 So.2d 813, 814 (Fla. 2d DCA), *review denied*, 492 So.2d 1332 (Fla. 1986).

Based on the foregoing, the Court denies Capps' request to impose a constructive trust.

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Capps maintains that there exists genuine issues of material fact which preclude the entry of summary judgment. Specifically, Capps lists the issues of disputed fact which include, but are not limited to the following: "the scope of duty owed Capps by MCI; whether MCI was a fiduciary with respect to Capps; whether MCI was in a position of confidence with respect to Capps, and if so, whether it had a duty to advise Capps of the overpayments which it allegedly made to CMI, and the MCI decision to withhold funds from CMI; whether Mr. Markobrada had telephone conversations with representatives of Capps in April, and if he did whether his representations to Capps, and his failure to inform Capps regarding the discovery of the alleged overpayments, and the potential impact on Capps was fraudulent, or in breach of a duty owed to Capps" (Doc. No. 67, p. 2).

However, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. Based on the substantive law, Capps may not go forward in an attempt to persuade the trier of fact that a garden-variety business relationship is a confidential relationship.

Therefore, Plaintiff's Motion for Partial Summary Judgment (Doc. No. 47) is **DENIED.** Defendant MCI Telecommunications Corporation's Motion for Summary Judgment (Doc. No. 48) is **GRANTED.** The Clerk is directed to enter judgment against Plaintiff Capps and in favor of Defendant MCI on Counts I and II of the Complaint.

Since the parties have not requested summary judgment on MCI's counterclaim, the Court will not make a determination on the counterclaim at this time. MCI's counterclaim is the only issue remaining for trial. This case will remain on the trial calendar commencing June 1, 1993.

**DONE AND ORDERED.**

2. The allegations of fraud and dishonest conduct contained in Capps' petition for involuntary bankruptcy against CMI (Doc. No. 49, Exhibit A) suggest that payment from CMI may not have been forthcoming even if the dispute between CMI and MCI had been resolved.