473 So.2d 679 (1984)
CITIZENS FEDERAL SAVINGS & LOAN ASSOCIATION OF ST. LUCIE COUNTY, Appellant/Cross Appellee,
v.
LOEB RHOADES, HORNBLOWER & CO., et al., Appellee/Cross Appellant.
No. 83-181.
District Court of Appeal of Florida, Fourth District.
May 9, 1984.
Rehearing Denied July 13, 1984.
*680 Jones, Foster & Moss, Vero Beach, and Larry Klein, West Palm Beach, for appellant/cross appellee.
Strook & Strook & Lavan, Miami, and Mark Hicks of Daniels & Hicks, Miami, for appellee/cross appellant.
BERANEK, Judge.
This is an appeal and a cross appeal involving a complex securities transaction case. The parties to the appeal are Citizens Federal Savings & Loan Association (Citizens) and Loeb Rhoades, Hornblower & Company (Loeb Rhoades), a securities company. Although not involved in the appeal, Mr. Frederick Coke (Coke) was the president of Citizens and involved in the litigation below. Citizens sued Loeb Rhoades for negligence, breach of fiduciary duty, fraud, and violation of various securities laws including Chapter 517, Florida Statutes (1981). The allegations of the complaint arise out of a series of transactions involving recommendations by Loeb Rhoades' representatives to Citizens that Citizens trade in certain mortgage-backed securities, commonly referred to as "Ginnie Mae" and "Freddie Mac" contracts. Plaintiff, Citizens, was trading in "forwards" or "futures" involving these securities. The contracts were claimed to be speculative and unsuitable for Savings and Loan investments. In addition, the volume and frequency of the trading were asserted to be improper.
Loeb Rhoades filed a counterclaim alleging that Citizens had breached an agreement to accept delivery and pay for over $2 million worth of these securities. Coke was sued by Citizens for violation of various duties, and Coke, in turn, also sued Loeb Rhoades asserting a cause of action similar to that asserted by Citizens in its suit against Loeb Rhoades. After an extensive trial, the circuit judge found in favor of Citizens on its main action and in favor of the counterclaimant, Loeb Rhoades, on the counterclaim. The court awarded substantial damages to both plaintiff and defendant, plus attorneys' fees and costs to both parties. The judgments entered by the trial court can be summarized as follows:
CITIZENS V. LOEB RHOADES  $763,645, including actual damages, punitive damages, costs, and $325,000 in attorneys' fees.
LOEB RHOADES V. CITIZENS  $951,229, including damages, interest, costs, and $350,000 in attorneys' fees.
CITIZENS V. COKE  $10,000.
COKE V. LOEB RHOADES  $0. (Judgment for defendant.)
Citizens appeals asserting (1) that the trial court erred in awarding attorneys' fees to Loeb Rhoades, (2) alternatively, that the award of attorneys' fees to Loeb Rhoades should have been limited to the services attributable to the prosecution of Loeb Rhoades' counterclaim, and (3) that the court erred in taxing costs in favor of Loeb Rhoades. Citizens does not question the court's award of damages ($462,726) to Loeb Rhoades on its counterclaim. This was the exact amount sought by Loeb Rhoades and, at least by the time of trial, there apparently was little controversy as to the counterclaim.
By cross appeal Loeb Rhoades urges that it was entitled to judgment as a matter of *681 law on the main action and, alternatively, that the court erred in its under-assessment of prejudgment interest on the judgment entered in favor of Loeb Rhoades on the counterclaim. Loeb Rhoades also attacks the assessment of attorneys' fees in favor of Citizens.
Somewhat surprisingly, a detailed factual analysis of this case is rendered inappropriate by the fact that Citizens does not attack the merits of the judgment in Loeb Rhoades' favor on its counterclaim. Further, Loeb Rhoades' attack on the merits of Citizens' judgment is limited to questions of law. Neither party has deemed it appropriate to deal with the basic factual background of the case which was obviously very complex.
We initially deal with the two appellate arguments on attorneys' fees. Generally, it seems the trial court decided to let both sides win total victories on their mutual claims for attorneys' fees and costs. Citizens was awarded $200,000 compensatory damages, $200,000 punitive damages, $325,000 in attorneys' fees, and costs of $35,762. Loeb Rhoades was awarded $462,726 in damages, $350,000 in attorneys' fees and $36,203 in costs. The attorneys' fees and costs awarded to each side are obviously similar in amount. The court's comments during the fee proceedings make it clear that he intended to award each party full recovery for all legal services expended and the total amount claimed in costs. In short, the trial court concluded both parties were entitled to all they sought for both attorneys' fees and costs.
On appeal, Citizens contends the award of attorneys' fees to Loeb Rhoades must be reversed because the claim for fees was not properly pled, and because the award has no contractual or statutory basis. We reject the first rather technical argument as to any deficiency in the pleadings. However, we conclude that fees were improperly awarded based on the second argument.
The general rule is that attorneys' fees are not taxable unless specifically provided by contract or statute. Codomo v. Emanuel, 91 So.2d 653 (Fla. 1956). Loeb Rhoades contends that it was entitled to attorneys' fees based upon Section 517.211, Florida Statutes (1981), or Section 17(a) of the 1933 United States Securities Act. An alternative basis for fees is asserted pursuant to an alleged "customer agreement" between the parties.
We initially conclude that Section 17(a) of the 1933 Securities Act could not have been an appropriate foundation for the assessment of the fees herein. The Section 17(a) claim was abandoned by Citizens and it did not produce any substantial effort on the part of counsel for either party.
The Loeb Rhoades' counterclaim was based on a breach of contract in that Citizens refused to take delivery and pay for specific securities pursuant to specific written contracts. There is no fee provision in these contracts sued upon. However, there is an attorneys' fee provision in a separate "customer agreement" which was entered into evidence by Citizens. However, this alleged "customer agreement" between the Savings and Loan Association and the brokerage house is also an insufficient foundation for fees. The "customer agreement" was initially introduced into evidence for the limited purpose of proving a signature on the document. The actual document introduced was illegible and the document was clearly not intended to relate to fees when originally introduced. It was not until substantially after the trial was over and the court had already announced its ruling on attorneys' fees that a legible copy of the document was located and an attempt was made to late-add it to the evidence by Loeb Rhoades. The trial court rejected the legible document from evidence and no error has been made to appear in this regard.
Loeb Rhoades relies upon Midland Guardian Co. v. Hagin, 370 So.2d 25 (Fla. 2d DCA 1979), and other similar cases in urging that the trial court should have considered the legible agreement as admissible although tardy evidence. We distinguish *682 these cases because here a serious argument exists based on the record as to the application of this particular "customer agreement" to the particular transactions in question. As such, there was no opportunity to litigate these issues during the trial because there was no document in evidence providing for fees. If the court had permitted the late addition of the agreement the case would have to have been reopened and the issue further litigated. We conclude that Loeb Rhoades' claim for attorneys' fees cannot be supported on any contractual basis.
The more difficult issue is the application of Section 517.211(6), Florida Statutes (1981), which provides as follows:
(6) In any action brought under this section, including an appeal, the court shall award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be unjust.
This attorneys' fee provision is contained in Section 517.211, which is entitled, "Remedies available in cases of unlawful sale." Chapter 517, commonly known as the Blue Sky Law, governs securities transactions. Citizens' complaint against Loeb Rhoades alleged violations of Chapter 517 amounting to fraud as fraud is defined in this specialized statutory scheme of regulation. The counterclaim by Loeb Rhoades was a breach of contract and there were no allegations or proof of Chapter 517 violations in the counterclaim. Loeb Rhoades contends Chapter 517 violations were involved in the case in that such issues were inextricably intertwined with the largely successful defense of Citizens' main action and with the totally successful prosecution of the counterclaim. Loeb Rhoades argues that it was the "net prevailing party" in the overall suit because the amount of money recovered by it was in excess of the amount recovered by Citizens. There is no clear precedent construing Chapter 517 in any comparable situation. However, Fairways Royale Association v. Hasam Realty Corp., 428 So.2d 288 (Fla. 4th DCA 1983), involved an analogous fee question. There a lease provided for attorneys' fees in suits brought to enforce the lease or collect the rent. The developer sued for rent under the lease and a condominium association counterclaimed for damages asserting a breach of a fiduciary duty. The developer won on the suit and counterclaim and was awarded attorneys' fees for both aspects of the case. This court reversed holding that fees should not have been awarded for the defense of the counterclaim. At page 290 we stated:
For the purposes of awarding attorneys' fees, each claim or permissive counterclaim must be assessed individually. Lauderdale North Properties, Inc. v. Seacrest Homes, Inc., 382 So.2d 386 (Fla. 4th DCA 1980). In addition, contractual attorneys' fees provisions must be construed strictly... .
Chapter 517 was not involved in the counterclaim on which Loeb Rhoades prevailed. As indicated, this counterclaim was essentially a breach of contract action and could have been maintained separate and apart from any Chapter 517 proceedings. On the other hand, the Citizens' judgment for $200,000 in compensatory damages was based on Chapter 517. Citizens asserted fraud as defined in that Chapter against Loeb Rhoades, and the trial court concluded, with abundant evidence, that Loeb Rhoades was guilty of fraud. There is no appellate attack mounted as to the assessment of the $400,000 in damages against Loeb Rhoades and under these circumstances, Citizens, rather than Loeb Rhoades, was the prevailing party as to Chapter 517. The fact that Loeb Rhoades secured a judgment in excess of Citizens' does not dictate a contrary result. The judgment in favor of Loeb Rhoades as to attorneys' fees is thus reversed.
The next issue we address is Loeb Rhoades' contention that the judgment for compensatory and punitive damages entered in favor of Citizens on its complaint should be reversed. Loeb Rhoades bases its argument on a statement by the trial judge made at the conclusion of the trial. While announcing its rulings, the trial *683 court denied Mr. Coke's claims against Loeb Rhoades on the grounds that Coke "knew what was going on and was really a part of it." Loeb Rhoades contends that Citizens was charged with all of the knowledge possessed by its president Coke and that if Coke "knew what was going on" then so did the Savings and Loan Association. Loeb Rhoades relies on Pan American World Airways, Inc. v. Continental Bank, 435 F. Supp. 642 (E.D.Pa. 1977), and other similar cases for the proposition that the knowledge of a high ranking corporate official must be imputed to the corporation itself.
The trial court rejected this theory, either on legal grounds or factually, when it ruled in favor of Citizens despite the knowledge possessed by Coke. The record is clear that the court's statement about Coke was made in reference to Coke's claim only and not in application to the entire case. We must affirm the trial court if any reason appears on the record and from an appellate perspective we view this as basically a factual issue which the trial court resolved on conflicting evidence. The case involved a series of transactions occurring over an extended period of time. The initial suit by Citizens was for an amount in excess of six million dollars and the facts changed substantially over the years in which the transactions transpired. We are not certain, from the record, when the Savings and Loan Association sustained the $200,000 in compensatory damages which were awarded. It may well have occurred quite late in the series of transactions and after Loeb Rhoades was specifically instructed to stop the transactions. At the very least the evidence was conflicting and no showing of error has been made. The trial court's ruling is affirmed as to compensatory damages in favor of Citizens. No independent attack is made on the assessment of punitive damages.
Finally, we vacate and remand the award of attorneys' fees in favor of Citizens. As discussed previously, the court awarded both parties attorneys' fees for their complete involvement in the entire case. The award of attorneys' fees to Citizens should have been for its prosecution of the complaint only and not for its defense of the counterclaim. See Palmer v. Shelby Plaza Motel, Inc., 443 So.2d 285 (Fla. 2d DCA 1983). We, therefore, vacate and remand the fees for reassessment in accordance with this opinion.
All other matters have been considered and are found to be without merit.
AFFIRMED IN PART and REVERSED IN PART.
HERSEY and DELL, JJ., concur.