STEVENSON, J.
At the conclusion of lengthy commercial litigation involving multiple claims and counterclaims, both the appellants and the appellees sought the award of attorneys’ fees. Ultimately, the trial court entered a $1.4 million-plus attorney’s fee judgment in favor of appellees, awarded costs to appel-lees, and denied the appellants’ motion for fees. Appellants challenge the trial court’s ruling finding that appellees were entitled to prevailing party fees, the extent of the fee award, the costs judgment, and the denial of their own motion for fees. We affirm in part, reverse in part, and remand for further proceedings.

The Underlying Litigation

The fee judgment is the end result of underlying litigation arising out of a soured business relationship involving the marketing and sales of extended automo *674 tive warranties in Puerto Rico as summarized in this court’s prior opinion. See Fid. Warranty Servs., Inc. v. Firstate Ins. Holdings, Inc., 74 So.3d 506 (Fla. 4th DCA 2011). Fidelity Warranty Services, Inc., and Jim Moran & Associates, Inc. (hereinafter “JMA” collectively) sued Firstate Insurance Holdings, Inc., Firstate Insurance by Eldridge, Firstate Insurance Company PR., Inc., and Charles and Renee Eldridge (hereinafter “Firstate” collectively), asserting five causes of action: breach of the administrative agreement that governed the parties’ business relationship (count I); breach of fiduciary duty (count II); conversion (count III); open account (count IV); and breach of a promissory note executed between the parties (count V). Firs-tate asserted nine counterclaims: breach of the administrative agreement (count I); tortious interference with a business relationship (count II); fraud in the inducement of execution of the fourth amendment to the administrative agreement and the promissory note (count III); civil theft (count IV); violation of FDUTPA (count V); defamation (count VI); conspiracy to commit tortious interference with business relationships (count VII); infringement of trade name (count VIII); and breach of fiduciary duty (count IX). By the conclusion of the trial, JMA had lost on each of the claims it had brought against Firstate. JMA prevailed on its defense of the counterclaims for fraudulent inducement, civil theft, FDUTPA violation, and infringement of trade name. Firstate, though, prevailed on tortious interference and defamation, and obtained a jury verdict awarding damages of $3.25 million and $2.5 million, respectively.
At the conclusion of the trial, both parties sought attorney’s fees. Firstate relied upon a prevailing party provision in the promissory note and argued that a majority of its attorney time was recoverable as the time spent defending the breach of note claim was sufficiently intertwined with the remaining claims and counterclaims such that allocation of attorney time was not possible. JMA sought statutory fees based on its prevailing on the civil theft counterclaim. According to JMA, it was the intentional tort counterclaims that made the case complex, and the time spent defending the civil theft counterclaim was intertwined with the time spent defending all tort-based counterclaims. Ultimately, the trial court granted Firstate’s motion for fees and awarded it $1,427,362.50 in fees, finding that it had prevailed on the note claim and that, with the exception of the fees concerning the civil theft counterclaim, all the claims and counterclaims were so intertwined that it was impossible to allocate the attorney time. The trial court also awarded $87,196.61 in costs to Firstate. As for JMA’s motion for fees, the trial court denied the same, finding that the claims could not be “separate and distinct” so as to permit multiple fee awards and intertwined as claimed by JMA; that fees were awardable to JMA only for time spent defending the civil theft counterclaim; and that no fees were awardable to JMA as it failed to allocate the time spent on the civil theft counterclaim.

The Fee Award in Favor of Firstate

JMA argues that the trial court erred in finding Firstate prevailed on the note claim, insisting the combination of Firs-tate’s successful defense of JMA’s breach of note claim and JMA’s successful defense of Firstate’s fraudulent inducement claim resulted in the parties “battling to a draw” with respect to the note. JMA also contends the trial court erred in finding that, with the exception of the civil theft counterclaim, the claims and counterclaims were sufficiently intertwined such that the attorney time could not be allocated. We reject both of these arguments and affirm *675 the trial court’s rulings on these issues without further comment.
We turn, then, to JMA’s claim that the fee award in favor of Firstate erroneously included fees awarded for attorney James Pruden, the firm of Graner, Root & Hei-movics (“Graner firm”), and attorney Jan Morris. JMA asserts each of these attorneys was employed under a contingency fee agreement; each withdrew from the representation prior to the occurrence of the contingency, i.e., the jury verdict in favor of Firstate; and, thus, each forfeited their right to a fee.
If, prior to the conclusion of the case, the client discharges an attorney employed under a contingency fee agreement without cause, then the attorney may recover the reasonable value of his services, as limited by the contract maximum. See Santini, M.D. v. Cleveland Clinic Fla., 65 So.3d 22, 29 (Fla. 4th DCA 2011), review denied sub nom. Miller v. Santini, 90 So.3d 272 (Fla.2012). If an attorney employed under a contingency fee agreement is discharged for cause, he may recover in quantum meruit, with such amount reduced by the damages suffered by the client as the result of counsel’s misconduct. Id. at 29-30 (citing Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller, 629 So.2d 947, 954 (Fla. 4th DCA 1993)). But, where an attorney voluntarily withdraws from the representation prior to the conclusion of the case, the attorney generally forfeits all right to recover a fee. See id. at 30 (citing Faro v. Romani, 641 So.2d 69 (Fla.1994)). An exception is made, allowing the withdrawing attorney to recover in quantum meruit, if the client’s conduct made the attorney’s continued representation legally impossible or if the client’s conduct would cause the attorney to violate his or her ethical obligations. See id. (citing Faro, 641 So.2d at 71); DePena v. Cruz, 884 So.2d 1062, 1063-64 (Fla. 2d DCA 2004); Carbonic Consultants, Inc. v. Herzfeld & Rubin, Inc., 699 So.2d 321, 323 (Fla. 3d DCA 1997); Kocha & Jones, P.A. v. Greenwald, 660 So.2d 1074, 1075 (Fla. 4th DCA 1995).
We agree that the evidence established a voluntary withdrawal, not necessitated by the conduct of the client, on the part of both Pruden and Morris. Pruden had represented Firstate in connection with the transactional documents underlying the business relationship between JMA and Firstate. Despite this, Pruden initially undertook the representation of Firstate in the litigation. Pruden explained that, as the case progressed, he became concerned he would be a witness and thus discontinued work on the case. Later, after the return of the verdict, Pruden was “reengaged”' and entered into yet another fee agreement; the new agreement recognized that Pruden had been “replaced” by the Gauthier firm. As for Morris, the evidence established that he withdrew from the representation when he made the decision to re-join his old law firm as the firm represented JMA on other matters. Thus, the trial court erred by including the fees for Pruden and Morris in the judgment.[1]
With respect to Morris, Firstate argues that even if he voluntarily withdrew, it is nonetheless entitled to recover the fees billed by Morris because, subsequent to his withdrawal, there was an *676 amended fee agreement obligating Firs-tate to pay Morris the greater of the $52,197.25 for services already rendered or three percent of any recovery. Prevailing law does not permit an attorney who represented a client under a contingency fee agreement to avoid the consequences of his withdrawal by subsequently modifying his fee agreement. See The Fla. Bar v. Hollander, 607 So.2d 412, 415 (Fla.1992) (expressing disapproval of termination and withdrawal clauses in a contingency fee agreement and stating “it is ... the Court’s view that any contingency fee contract which permits the attorney to withdraw from representation without fault on part of the client or other just reason, and purports to allow the attorney to collect a fee for services already rendered would be unenforceable and unethical”); Kay v. Home Depot, Inc., 623 So.2d 764, 766-67 (Fla. 5th DCA 1993) (reversing fee award dividing contingency fee between new attorney and withdrawing attorney and noting that, by seeking a fee, the withdrawing attorney was attempting to accomplish remedy in withdrawal clause condemned by Hollander). See also In re Naturally Beautiful Nails, Inc., 18 Fla. L. Weekly Fed. B 19 (Bankr.M.D.Fla. Oct. 13, 2004) (citing Faro and Hollander as authority for the trial court’s ruling refusing to enforce fee claim of attorney who withdrew from representation due to firm merger and, subsequent to that withdrawal, entered into modified fee agreement with client).
JMA also contends the fee award in favor of Firstate must be reversed to the extent it includes fees for the Gauthier firm. We agree. Subsequent to the trial court’s ruling on the issue of attorney’s fees, this court reversed the underlying money judgment in favor of Firstate that resulted from the jury verdict on the counterclaims for tortious interference (count II) and defamation (count VI), and remanded with directions that judgment be entered in favor of JMA on such counterclaims. The Gauthier firm was employed under a strict contingency fee agreement and its right to fees was limited to a percentage of any monetary recovery by Firstate. As the underlying monetary judgment has been reversed, the Gauthier firm is not entitled to compensation. See Kirshenbaum v. Hartshorn, 539 So.2d 497, 497-98 (Fla. 2d DCA 1989) (recognizing no fee is due under a contingency fee contract if the contingency fails to occur); see also Guy Bennett Rubin, P.A. v. Guettler, 73 So.3d 809, 814 (Fla. 4th DCA 2011) (recognizing that attorney employed under contingency fee agreement does not have right to even quantum meruit recovery if contingency did not occur).
In addition to contending that no fees should have been awarded for Pruden, Morris, the Graner firm, and the Gauthier firm, JMA also contends the fee judgment is subject to reversal because it includes attorney time/rates not supported by the evidence and/or not awardable; attorney time that was not sufficiently documented; and attorney time that amounted to a duplication of efforts or that was associated with changes in counsel. Having considered the specifics of these arguments, we find no further error as to the amount of the fees awarded to Firstate.
Finally, the fee judgment entered by the trial court provides that the award is to bear interest at eight percent from July 28, 2009 — the date Firstate’s entitlement to fees was determined. We find no error in the trial court’s ruling that interest is to run from the date of entitlement. See Butler v. Yusem, 3 So.3d 1185, 1186 (Fla.2009). We agree, though, that the correct interest rate was six percent — the statutory rate at the time of entry of the February 2011 fee judgment. See § 55.03(3), *677 Fla. Stat. (2009) (stating interest rate is established at time judgment is obtained); Budget Rent-A-Car Sys., Inc. v. Castellano, 764 So.2d 889, 892 (Fla. 4th DCA 2000) (holding prejudgment interest is to be calculated at the same rate as post-judgment interest).

Costs Judgment in favor of Firstate

The trial court awarded Firstate costs in the amount of $87,196.61, finding that it was the party who had actually recovered judgment and the party who prevailed on the significant issues in the litigation. JMA challenges the costs award on two grounds: inadequate evidentiary support and the reversal of the underlying judgment. We reject the first of these arguments, but agree that this court’s subsequent reversal of the underlying multimillion dollar judgment in favor of Firstate requires reversal of the costs judgment and remand to the trial court for reconsideration on the matter of the prevailing party. See § 57.041(1), Fla. Stat. (2009) (“The party recovering judgment shall recover all his or her legal costs and charges.... ”); Markin v. Markin, 958 So.2d 13,15 (Fla. 4th DCA 2007) (recognizing Moritz[2] test for prevailing party, i.e., the party who prevailed on the significant issues in the litigation, applies in determining entitlement to costs).

Denial of JMA’s Motion for Fees

JMA obtained a directed verdict on the civil theft counterclaim and later sought fees, relying upon fee provisions in chapter 772 and 812, which provide “[t]he defendant shall be entitled to recover reasonable attorney’s fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support.” §§ 772.104(8), 812.035(7), Fla. Stat. The trial court found that the directed verdict was sufficient to trigger JMA’s entitlement to fees under the statutes, but denied the motion for fees after JMA failed to isolate the attorney time spent on the civil theft counterclaim. While JMA had excluded from its fee request attorney time associated with the note, it contended that the attorney time spent defending the civil theft counterclaim was intertwined with the time spent defending all the intentional tort counterclaims. In denying JMA’s motion for fees, the trial court reasoned that the civil theft counterclaim could not be “separate and distinct” from the note collection action for purposes of permitting multiple fee awards and yet intertwined with the other intentional tort counterclaims for purposes of allocating attorney time and determining the amount of fees to be awarded.
Florida law permits more than one prevailing party fee award in a single lawsuit where each of the claims that support a fee award is “separate and distinct and would support an independent action, as opposed to being an alternative theory of liability for the same wrong.” Folta v. Bolton, 493 So.2d 440, 442 (Fla.1986), superseded by rule on other grounds as stated in E & A Produce Corp. v. Superior Garlic Inti, Inc., 864 So.2d 449 (Fla. 3d DCA 2003). Firstate’s civil theft counterclaim includes allegations covering the gamut of the parties’ business dealings, including allegations regarding the note. JMA’s note claim and Firstate’s civil theft counterclaim cannot, however, fairly be characterized as alternative theories of liability for the same wrong. The allegations of the civil theft counterclaim are much broader than resolution of who owes whom under the note and the counterclaim seeks redress for “wrongs” not encompassed in the note collection claim, i.e., in the counterclaim, Firstate seeks to have JMA in *678 demnify it for damages claims made against it by its dealers and finance companies, and to have JMA compensate it for the loss of its business. This conclusion is not altered by the possibility that the civil theft counterclaim and Firstate’s other intentional tort counterclaims may “involve a common core of facts and are based on related legal theories” such that the attorney time was intertwined and could not be allocated among the intentional tort counterclaims. See, e.g., Waverly at Las Olas Condo. Ass’n v. Waverly Las Olas, LLC, 88 So.3d 386, 388 (Fla. 4th DGA 2012) (recognizing that where a contract or statute authorizes fees for some claims and not others, a full fee may be awarded “ ‘where the claims involve a ‘common core’ of facts and are based on ‘related legal theories’ ... unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorney’s fees were sought’ or were authorized”) (quoting Chodorow v. Moore, 947 So.2d 577, 579 (Fla. 4th DCA 2007) (citation omitted)).
The Folla test for determining the propriety of multiple prevailing party fee awards asks whether the two claims would support an independent action and are more than simply alternative theories of liability, not whether the claims arise from a “common core of facts” and involve “related legal theories” such that the attorney time is fairly attributable to both claims and not subject to allocation. 493 So.2d 442-43. We thus reverse the denial of JMA’s motion for fees and remand the matter to the trial court for the award of those fees JMA incurred in connection with defending the civil theft counterclaim, including any attorney time sufficiently intertwined with defense of the civil theft counterclaim such that allocation is not possible.[3]
In sum, we affirm the trial court’s ruling that Firstate was entitled to fees for its successful defense of JMA’s note claim. For the reasons set forth above, we reverse as to the amount of Firstate’s fee judgment and remand with directions that the trial court eliminate from the award the hours spent by Attorney Pruden, Attorney Morris, and the Gauthier firm and correct the judgment to reflect an interest rate of six percent. We also reverse the costs judgment in favor of Firstate and remand for the trial court to reconsider who is the prevailing party in light of this court’s reversal of the underlying multimillion judgment in favor of Firstate. Finally, we reverse the denial of JMA’s motion seeking to recover those fees it incurred in connection with the civil theft counterclaim and remand for the trial court to make a determination regarding the appropriate amount of such award.

Affirmed in part; Reversed in part; and Remanded.

HAZOURI and GERBER, JJ., concur.

. We reject JMA's claim that the evidence established a voluntary withdrawal by the Graner firm. The Graner firm was hired early in the litigation for the purpose of assisting attorney Pruden. When Pruden ceased working on the case, so did the Graner firm. The only evidence portraying the end of the Graner firm and Firstate’s attorney-client relationship was attorney Graner’s testimony that, following the mock trial, someone else was going to be local counsel.

. Moritz v. Hoyt Enters., Inc., 604 So.2d 807 (Fla.1992).

. We note that JMA also prevailed on the FDUTPA counterclaim. The trial court noted in its order that JMA’s FDUTPA fee claim was not yet ripe as the fee statute, section 501.2105(1), Florida Statutes, provides for a prevailing party fee award only after the exhaustion of all appeals, but suggested that, in light of the jury’s verdict, the court was not inclined to award fees on the claim to JMA. Since the entry of the trial court’s order, the appeal has been concluded and the jury verdict in favor of Firstate reversed. JMA's entitlement to fees for the FDUTPA counterclaim is thus an outstanding issue that will also have to be addressed on remand.