DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHORELINE FOUNDATION, INC.,**
Appellant,

v.

**VICTOR BRISK,**
Appellee.

No. 4D18-1605

[June 26, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Sandra Perlman, Judge; L.T. Case Nos. CACE 14-020494 (02), CACE 14-020793 (04).

Steven H. Osber of Conrad & Scherer LLP, Fort Lauderdale and Elliot B. Kula, W. Aaron Daniel, and Ashley P. Singrossi of Kula & Associates, P.A., Miami, for appellant.

Jeffrey A. Rynor and Loren H. Cohen of Mitrani, Rynor, Adamsky & Toland, P.A., Miami Beach, for appellee.

KLINGENSMITH, J.

Appellant Shoreline Foundation, Inc., ("Shoreline") appeals an Amended Final Judgment entered following a jury verdict in favor of appellee Victor Brisk. Brisk brought several claims against Shoreline, his former employer, but prevailed only on his count alleging breach of fiduciary duty stemming from what he claims was a joint venture with Shoreline to develop property in the Bahamas. Shoreline contends that the evidence was insufficient to establish that a joint venture existed, and also challenges the trial court's order denying entitlement to attorneys' fees under Florida's Blue Sky Law.[1] We agree on both issues and reverse. We affirm all other issues raised on appeal and cross-appeal without comment.

In October 2003, one of Shoreline's principals approached Brisk with an opportunity to invest in Hidden Hills, a townhome development in the

---

[1] Chapter 517, Florida Statutes (2015).

Bahamas. Shoreline was developing Hidden Hills in conjunction with a Bahamian entity called P&P. Brisk was given the opportunity to purchase: (1) a 15% ownership interest in seven of the townhome units Shoreline would own; and (2) 15% ownership interest in the 50% of P&P's shares in the Hidden Hills Project that Shoreline would own. The parties entered into a written agreement called a "Partial Assignment" that assigned Brisk the above ownership interests. Brisk was not a party to the Hidden Hills Contract between Shoreline and P&P, but the Partial Assignment established Brisk knew about the Hidden Hills Contract:

> 5. Acknowledgement. Brisk acknowledges that he is fully acquainted with the condominium project which is the subject of this agreement and that he will *actively participate* in the development of the project.

(Emphasis added).

The record shows Brisk was indeed aware of the Hidden Hills Project's status because he was employed by Shoreline as its Controller. There is no mention of Brisk's duties or authority, nor is there any mention of a joint venture or partnership between Brisk and Shoreline contained in the Partial Assignment.[2]

Over the next five years, Brisk continued to invest in the project, making contributions toward his share[3] totaling $219,600 while remaining employed as Shoreline's Controller. However, Brisk never controlled the Hidden Hills Project, and never met with the P&P principals. According to the evidence, Brisk's involvement in the project, aside from his financial investment, was limited to occasionally performing accounting duties, verifying and paying invoices, and entering those expense allocations into the accounting software.

Unfortunately for the parties, the Hidden Hills Project fell victim to the 2008 recession. P&P's construction went into foreclosure, and the development went unfinished and unsold. While Shoreline continued to make payments on the various mortgages to which Shoreline's principals remained obligated, Brisk was under no such personal obligation for these mortgages.

---

[2] The Hidden Hills Contract between Shoreline and P&P specifically designated the relationship between those two entities as a joint venture.
[3] Under the terms of the Partial Agreement, Brisk's interest in the Hidden Hills Project was proportionate to his actual investment. If Brisk failed to pay the total valuation of his 15% share, then his percentage interest would also be reduced.

Soon after, the relationship between Brisk and Shoreline soured, and Brisk was terminated from his position as Controller. When Brisk correspondingly stopped making payments toward his 15% interest and requested a refund of his investment in the Hidden Hills Project, Shoreline refused. Brisk then filed a multi-count suit against Shoreline and the Shoreline principals (collectively "defendants") alleging breach of contract, fraud, misrepresentation in violation of section 517.301(1), Florida Statutes (2015), (the "Blue Sky Law"), breach of fiduciary duty, and civil theft, among other claims. Shoreline filed a separate declaratory judgment claim to establish Brisk's continuing duty to make payments under the terms of the Partial Assignment. Shoreline's declaratory judgment claim was consolidated with Brisk's suit for trial.

At trial Brisk alleged the defendants owed him a fiduciary duty, stemming from what he claimed was his role as a joint venturer, to develop the Hidden Hills Project. Brisk claimed a joint venture existed because he was a "partner" with Shoreline in the Hidden Hills Project and stipulated that the only basis for his breach of fiduciary duty claim stemmed from this alleged joint venture. Shoreline asserted they did not owe Brisk a fiduciary duty because he was not a joint venturer in the Hidden Hills Project since the parties merely entered into an "arms-length transaction." All parties agreed that without the existence of a joint venture there could be no claim for breach of fiduciary duty.

At the close of Brisk's case, Shoreline moved for a directed verdict arguing there was no evidence to support the existence of a joint venture. The trial court denied the motion and ruled that the question of whether the parties were engaged in a joint venture was an issue of fact for the jury.

The jury found in favor of the defendants on all claims except for the breach of fiduciary duty claim under Count IV of Brisk's complaint. While the jury found that a joint venture did exist between Shoreline, the Shoreline principals, and Brisk, they only found that Shoreline and one of its principals had breached their fiduciary duty. The jury awarded Brisk damages in the amount of $219,600—an amount equal to Brisk's investment in the Hidden Hills Project. As to Shoreline's declaratory judgment claim, the jury found Brisk in breach of the Partial Assignment for failing to make the required payments, but did not reduce Brisk's percentage of interest, finding Shoreline had waived the right to any reduction by failing to demand the payments per the terms of the Partial Assignment.

3

After the verdict, the parties filed various post-trial motions. Shoreline renewed their arguments on the existence of a joint venture by way of a motion for judgment notwithstanding the verdict (JNOV). The court denied the JNOV and ruled that Brisk would be awarded $219,600 plus prejudgment interest and confirmed he would also retain his 15% interest in the project. Final judgment was entered accordingly.

Shoreline also moved for determination of entitlement to attorneys' fees as the prevailing party on Brisk's Blue Sky Law claim. Brisk argued such an award would be "unjust" because he prevailed on the fiduciary duty claim, which he alleged was "inextricably intertwined" with the Blue Sky Law claim. Because of the related nature of the claims, Brisk argued that he was the prevailing party under the "significant issues test." Persuaded by this argument, the trial court denied Shoreline's request for attorneys' fees under the statute.[4] An Amended Final Judgment was later entered incorporating the amount of the prejudgment interest awarded to Brisk for prevailing on the breach of fiduciary claim and stating "Brisk owns a 15% interest in Shoreline's interest in the Hidden Hills Project pursuant to the Partial Assignment," and specifically noting that Shoreline's principals were not liable to Brisk. This appeal follows.

## 1. Shoreline's Motion For JNOV

"We review the court's denial of a motion for JNOV *de novo*. A JNOV is appropriate only when there is no evidence upon which the jury could rely in finding for the non-moving party." *Mulvey v. Stephens*, 250 So. 3d 106, 109 (Fla. 4th DCA 2018) (citations omitted). A motion for JNOV is the substantive equivalent of a motion for directed verdict. *See Hall v. Ricardo*, 331 So. 2d 375, 376 (Fla. 3d DCA 1976).

Under Florida law, a joint venture occurs "when two or more persons combine their property or time or a combination thereof in conducting some particular line of trade or for some particular business deal." *Kislak v. Kreedian*, 95 So. 2d 510, 515 (Fla. 1957). This relationship must arise out of a contract. *See id.*

> In order to create a joint venture, a contract must contain the following elements: "(1) a community of interest in the performance of the common purpose, (2) joint control or right

---

[4] Section 517.211(6), Florida Statutes (2015), provides that "[i]n any action brought under this section, including an appeal, the court shall award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be unjust."

4

of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained."

*Jackson–Shaw Co. v. Jacksonville Aviation Auth.*, 8 So. 3d 1076, 1089 (Fla. 2008) (quoting *Kislak*, 95 So. 2d at 515). "The absence of one of the elements precludes a finding of a joint venture. Moreover, in a joint venture, the parties have the right and authority to bind the others with reference to the subject matter of the joint venture." *Id.* (citations omitted).

Joint control "exists when a contract specifically allows both parties to control the operations of the venture." *MDVIP, Inc. v. Beber*, 222 So. 3d 555, 564 (Fla. 4th DCA 2017). "A contract of joint adventure is in effect one of mutual agency, each adventurer acting as a principal in his own behalf and as agent for his co-adventurer." *Marriott Int'l, Inc. v. American Bridge Bah. Ltd.*, 193 So. 3d 902, 906 (Fla. 3d 2015) (quoting *Deal Farms, Inc. v. Farm & Ranch Supply, Inc.*, 382 So. 2d 888, 891 (Fla. 1st DCA 1980)). Thus, "[w]here the actions of one party do not bind the other, joint control does not exist." *In re Cuenant*, 339 B.R. 262, 276 (Bankr. M.D. Fla. 2006).

Although joint ventures and partnerships are separate legal entities, both are governed by the same rules of law. *See Sheridan Healthcorp, Inc. v. Amko*, 993 So. 2d 167, 170 (Fla. 4th DCA 2008). "The ultimate determination, however, turns upon the intent of the parties." *Fla. Trading and Inv. Co., v. River Constr. Servs., Inc.*, 537 So. 2d 600, 602 (Fla. 2d DCA 1988). "Whether two or more persons have created a joint venture between themselves depends on their intent, 'which is to be determined in accordance with the ordinary rules governing the interpretation of contracts.'" *A & A Elec. Servs., Inc. v. Jurado*, 198 So. 3d 37, 41 (Fla. 2d DCA 2015) (quoting *Willis v. Fowler*, 136 So. 358, 365 (Fla. 1931)).

Here, the parties have a written agreement that is unambiguous in establishing their relationship. It is evident from the plain language of the Partial Agreement that Brisk's role was that of an investor, not a co-manager. Mere contribution of capital, absent the exercise of joint control, does not establish a joint venture. *See, e.g., Pinnacle Port Cmty. Ass'n, Inc. v. Orenstein*, 872 F.2d 1536, 1539-40 (11th Cir. 1989) (no joint venture where lender "would fund [condominium development] on an 'as needed' basis" and developer and lender "each had agents on site who had independent areas of control," and "the actions of one did not bind the other") (applying Florida law); *cf. Arango v. Reyka*, 507 So. 2d 1211, 1213-14 (Fla. 4th DCA 1987) (holding that sufficient evidence of joint control existed to send the issue to the jury where a hospital maintained control

over day-to-day operations such as patient scheduling and group assignments).

Brisk alleges there was competent substantial evidence presented at trial from which the jury could have found the existence of a joint venture. We disagree. As evidence of joint control, Brisk points to the fact that he ran the payroll and cut the checks for the Hidden Hills employees. But such duties were within the scope of his employment as Controller—Brisk ran payroll and cut checks for the employees of *all* Shoreline projects— regardless of whether some work was done on his own time. The evidence was clear that when performing bookkeeping and accounting functions, Brisk had no real authority to control any of the management or day-to-day operation decisions relating to the Hidden Hills Project. The fact that he made entries into accounting software for Hidden Hills does not equate to joint control for the purposes of creating a joint venture. The evidence shows Brisk was subject to Shoreline's control when completing his Controller tasks and did so pursuant to authorization from the Shoreline principals. Even when Brisk was actively participating in the Hidden Hills Project outside his role as Controller, he was directed entirely by Shoreline's principals. For instance, although Brisk personally met with and extended an offer to a potential investor, this only occurred after one of Shoreline's principals approached Brisk with the idea, approved extending the offer, and directed Brisk entirely in the process.

Brisk's also argues a joint venture was created based on the trial testimony of some Shoreline principals referencing Brisk as a "partner" in the Hidden Hills project, or that this evidence at least created a question of fact for the jury. While describing Brisk as a "partner" in conversation might be sufficient to create "apparent authority" vis-à-vis any dealings with third parties, it is insufficient to create either a partnership or a joint venture where the intent of the parties and the scope of their relationship has been outlined in a formal written agreement between them. *See Kislak*, 95 So. 2d at 514 ("[I]t is now understood that [partnerships and joint ventures] are not identical and that decisions defining and describing partnerships are not necessarily controlling upon the question of whether parties to a particular contract are joint adventurers.").

Brisk's reliance on *Barwick v. Alderman*, 35 So. 13, 15 (Fla. 1903), to establish the creation of a partnership is misplaced. There, the Florida Supreme Court held that testimony that an individual was held out as a partner is "competent evidence tending to prove the partnership in fact." *Id.* However, that case dealt with a written contract between the parties which was left unexecuted, thus requiring consideration of parol evidence. *Id.* at 16. Here, the parties formalized their intentions with an

6

unambiguous written contract, making *Barwick* inapplicable to this situation. Moreover, *Barwick* pertains to the creation of a partnership, not a joint venture; it is unclear how referencing an individual as a "partner" establishes any of the five elements necessary to create a joint venture.

Based on the foregoing, we conclude that the evidence overwhelmingly fails to support the existence of a joint venture between Brisk, Shoreline or its principals. Shoreline never intended for Brisk to share equal control in the Hidden Hills Project. On the contrary, the evidence establishes that Shoreline—along with P&P—at all times exercised full management control over Hidden Hills. Shoreline principals held weekly meetings to manage the daily decisions and progress of the Hidden Hills Project; Brisk was never invited to attend these meetings and was merely informed of those decisions by the Shoreline principals. Shoreline principals also directed Shoreline's employee staffing at the Hidden Hills Project site, including the hiring of independent contractors and an attorney. Again, Brisk did not participate in these decisions. At best, the evidence shows Brisk was an employee of Shoreline, who later became an investor in the project with no defined responsibilities or managerial duties.

The Partial Assignment did not grant Brisk the authority to control or bind Shoreline in the Hidden Hills Project, and as such, neither the contract nor these statements establish a right to joint control. *See, e.g., E & H Cruises, Ltd. v. Baker*, 88 So. 3d 291, 295 (Fla. 3d DCA 2012) (no joint venture where plain language of agreement revealed one party could not control the other). There was no competent substantial evidence to support the existence of joint control, thus precluding the existence of a joint venture. Therefore, Shoreline and its principals were entitled to a directed verdict, or alternatively, to a JNOV on Brisk's fiduciary duty claim.

## 2. Shoreline's Motion for Fees under Section 517.211(6)

A trial court's determination of whether a party prevails on the "significant issues" in litigation so as to designate that party as the prevailing party for the purpose of awarding attorneys' fees is reviewed for abuse of discretion. *See Olson v. Pickett Downs Unit IV Homeowner's Ass'n, Inc.*, 205 So. 3d 869, 872 (Fla. 5th DCA 2016) (quoting *Moritz v. Hoyt Enters, Inc.*, 604 So. 2d 807, 810 (Fla. 1992)). However, "[t]he determination of whether multiple claims within a lawsuit are separate and distinct for purposes of attorney's fees is a matter of law to be reviewed de novo." *Leon F. Cohn, M.D., P.A. v. Visual Health & Surgical Ctr., Inc.*, 125 So. 3d 860, 863 (Fla. 4th DCA 2013) (quoting *Avatar Dev. Corp. v. DePani Constr., Inc.*, 883 So. 2d 344, 345 (Fla. 4th DCA 2004)).

"It is well-settled that attorneys' fees can derive only from either a statutory basis or an agreement between the parties." *Waverly at Las Olas Condo. Ass'n, Inc. v. Waverly Las Olas, LLC*, 88 So. 3d 386, 389 (Fla. 4th DCA 2012) (quoting *Fla. Hurricane Prot. & Awning, Inc. v. Pastina*, 43 So. 3d 893, 895 (Fla. 4th DCA 2010)). "Florida law permits more than one prevailing party in a single lawsuit where each of the claims that support a fee award is 'separate and distinct and would support an independent action, as opposed to being an alternative theory of liability for the same wrong.'" *Leon F. Cohn, M.D., P.A.*, 125 So. 3d at 863 (quoting *Fid. Warranty Servs., Inc. v. Firstate Ins. Holdings, Inc.*, 98 So. 3d 672, 677 (Fla. 4th DCA 2012); *accord Fid. Warranty Servs.*, 98 So. 3d at 677 (reversing denial of fees to defendant that prevailed on one distinct claim). Claims are separate and distinct if "they could support an independent action and are not simply alternative theories of liability for the same wrong." *Padgett v. Kessinger*, 190 So. 3d 105, 108 (Fla. 4th DCA 2015) (quoting *Avatar Dev. Corp. v. DePani Constr., Inc.*, 883 So. 2d 344, 346 (Fla. 4th DCA 2004)).

"Chapter 517, commonly known as the Blue Sky Law, governs securities transactions." *Citizens Fed. Sav. & Loan Ass'n of St. Lucie Cty. v. Loeb Rhoades, Hornblower & Co.*, 473 So. 2d 679, 682 (Fla. 4th DCA 1984). Section 517.211(6), Florida Statutes (2015), allows a court to decline an award of attorneys' fees to a prevailing party if the court finds that the award of such fees would be "unjust."

However, "[t]here is little Florida authority construing what the word 'unjust' means within the context of this statute . . . ." *Newsom v. Dean Witter Reynolds, Inc.*, 558 So. 2d 1076, 1077 (Fla. 1st DCA 1990). Black's Law Dictionary defines "unjust" as "[c]ontrary to right and justice, or to the enjoyment of his rights by another, or to the standards of conduct furnished by the laws." BLACK'S LAW DICTIONARY 1535 (6th ed. 1995). The American Heritage Dictionary defines "unjust" as: "1. Being in violation of principles of justice or fairness; unfair. 2. Acting in violation of such principles; unfair in one's dealings and actions." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1323 (2nd ed. 1985). Webster's Third New International Dictionary defines "unjust" as, "deficient in justice and fairness." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 2501 (2002). Although equitable considerations should inform a court's decision in this area, it cannot be said that an award of fees to Shoreline is "unjust" under any of these definitions.

The record shows the trial court declined to award fees under the Blue Sky Law to Shoreline for successfully defending against Count III primarily because it was persuaded by Brisk's argument that Count IV, the breach of fiduciary claim, was "inextricably intertwined" with the Blue Sky Law

violation and made Brisk the prevailing party on a "significant issue" in the case. However, the mere fact that Brisk recovered under only one claim in his multi-count suit—and, incidentally, did not prevail on any of the eight other separate counts he filed—is insufficient to find that an award of fees under Section 517.211(6) was "unfair" or "contrary to standards of conduct furnished by the laws." THE AMERICAN HERITAGE DICTIONARY 1323 (2d ed. 1985); BLACK'S LAW DICTIONARY 1535 (6th ed. 1995).

Here, the claims of breach of fiduciary duty and violation of the Blue Sky Law,[5] counts upon which each opposing party prevailed, were separate and distinct claims requiring different allegations of wrongdoing and different elements of proof. We therefore reverse the denial of Shoreline's motion for fees and remand with instructions to enter an order awarding appellee statutory attorney fees under section 517.211(6), and to determine a reasonable amount thereto.

*Affirmed in part; reversed in part and remanded with instructions.*

MAY and CIKLIN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

[5] Section 517.301(1)(a), Fla. Stat.

9